[No. 40081.    Department Two.    December 5, 1968.]

CHARLES A. DIKE, JR., *Plaintiff*, v. ROBBIN ANGELA DIKE, *Defendant*, JOHN R. SIMMONS, *Appellant*, THE STATE OF WASHINGTON, *Respondent.**

*Reported in 448 P.2d 490.

2

*Phil McIntosh* and *McIntosh & Simmons,* for appellant.

*Charles O. Carroll, Herbert L. Onstad,* and *Richard C. Nelson* (of *Cole, Chapin, O'Connell & Nelson*), for respondent.

NEILL, J.—This is an appeal from a conviction of an attorney for contempt committed in the presence of the court.

Appellant was the attorney for Robbin Angela Dike, defendant in a divorce action. On November 17, 1967, the court entered an order in the divorce action placing temporary custody of the parties' minor child with a Mr. and Mrs. McCutchin, subject to visitation rights by both parents and to the defendant mother's right of temporary custody on weekends. Appellant, as attorney for defendant, had full knowledge of the provisions of the order.

On November 29, 1967, Mrs. Dike removed the minor child from the McCutchin home and failed to return her. A motion to find defendant in contempt for violation of the custody order was served on appellant on December 8, 1967. Neither defendant nor appellant appeared at the December 15th hearing on the motion for contempt. The court thereupon directed plaintiff's counsel to prepare an order addressed to appellant requiring him to appear before the court at 11:30 a.m. on December 18, 1967, and to produce defendant or to show cause why he should not produce her. This order was served on appellant at 9:30 a.m., December 18th.

Appellant appeared as directed. He filed a special appearance, motion to quash, and motion and affidavit of prejudice for transfer to a different department of the court. All were summarily denied. He refused to answer any questions relative to his client's whereabouts. He contended that the questions were improper because his information was confidential and that disclosing this information would be in violation of the canons of professional ethics.

The court thereupon had a uniformed deputy sheriff come to the courtroom, remove appellant, handcuffed, to the county jail where he was booked, fingerprinted and "mugged". Subsequently, appellant was released on $5,000

cash bail. It was not until January 8, 1968, that, pursuant to a motion by appellant, an order in compliance was RCW 7.20.030[1] was entered. An order was entered January 12, 1968, purging appellant of the contempt and exonerating his bond. This order recites that defendant had appeared at the trial of the divorce action on January 2nd.[2]

Appellant contends that the court erred in denying his motion to transfer the action to a different department in the superior court and in overruling his special appearance and motion to quash the show cause order on the basis of lack of jurisdiction. Appellant's contention that the matter should have been transferred to another department is without merit. The trial court had properly assumed continuing jurisdiction over the minor child and had awarded temporary custody to someone other than the parents, pending a final determination of the divorce action. The primary purpose of the hearing at which appellant was ordered to appear was to investigate into the alleged violation of the court's temporary custody order and to determine the whereabouts of the child. The judge who acted in the temporary order was familiar with the facts of the case including the mother's wrongful actions. He, therefore, was the proper judge to consider appellant's refusal to disclose the whereabouts of the mother and child.

As to appellant's contention that the court lacked jurisdiction or power to compel appellant to appear personally at the hearing we do not agree. It has been stated that

> While a court may be expressly granted the incidental powers necessary to effectuate its jurisdiction, a grant of jurisdiction, in the absence of prohibitive legislation, implies the necessary and usual incidental powers essential to effectuate it, and, subject to existing laws and consti-

---

[1]"When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of contempt, and that he be punished as therein prescribed." RCW 7.20.030.

[2]It is of passing interest that the divorce trial resulted in the defendant's obtaining custody of the child.

tutional provisions, every regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and for the enforcement of its judgments and mandates. (Footnotes omitted.) 21 C.J.S. *Courts* § 88, p. 136 (1940).

It has also been said that courts have inherent power

. . . to supervise, and to correct the errors or abuses of, their officers and subordinates.

. . . to investigate charges of acts having a direct tendency to obstruct or prevent the administration of justice, or charges of misconduct on the part of their officers. (Footnotes omitted.) 21 C.J.S. *Courts* § 88, p. 138 (1940).

To hold that a trial judge has no jurisdiction to compel an attorney, representing one of the parties in an action pending before that judge, to appear at a hearing being held to determine whether the attorney's client is deliberately violating a valid order of that court would render trial courts powerless to enforce their judgments and mandates and to insure the orderly administration of justice.

Appellant assigns error to several of the findings made by the court, but our reading of the record convinces us that the findings are supported by the evidence with one exception. The court found that "Robbin Angela Dike intermittently observed and disregarded said order until November 29, 1967 when Mrs. Dike, with the knowledge of John Simmons, her Attorney, forcibly removed the minor from the McCutchins' custody . . . ." We see no support for the finding that the actions of Mrs. Dike were performed with the knowledge of her attorney. However, even striking such finding will not alter the basic issue since the wrongful act of Mrs. Dike was continuing and it is obvious that appellant became aware of her misdeed during its continuance.

In discussing the primary issue raised in this appeal, it is important to recognize that an attorney has a dual role—he is both an advocate for his client and an officer of the court. The various duties and obligations of

appellant emanate from these two roles. Neither duty can be meaningfully considered independent from the other. Of this dual role of the attorney, it has been said (Henry S. Drinker, Legal Ethics p. 75, (1953), quoting from *People v. Beattie*, 137 Ill. 553, 574 (1891)):

> The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions.

*See also,* 7 Am. Jur. 2d *Attorneys at Law* § 5 (1963); and 20 Am. Jur. 2d *Courts* § 4 (1965).

When the court learned that appellant's client had violated its custody order, it had the power as well as the obligation to investigate into the matter, to seek the whereabouts of the child, to order the mother to appear before the court and produce the child.

Appellant, as an officer of the court, had the duty to avoid hindering the court's efforts to protect the child's welfare, if not the duty to affirmatively assist the court. Appellant's refusal to disclose the whereabouts of his client clearly hindered the court's efforts in this regard and would constitute contempt of court unless his duty to preserve inviolate the confidences of his client encompassed his knowledge of the client's address and unless this latter duty overrides appellant's duty to the court.

Before turning to a discussion of the applicability of the attorney-client privilege, we should touch upon one other preliminary issue. The canons of professional ethics (CPE 1) provide in part that

> It is the duty of the lawyer to maintain towards the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the bar against unjust criticism and clamor.

The attorney's duty flowing from CPE 1 has been explained as follows (Drinker, *supra*, at 69):

Although it is both the right and duty of a lawyer to protest vigorously rulings on evidence or procedure or statements in the judge's charge which he deems erroneous, nevertheless, when the ruling has been finally made, the lawyer must, for the time being, accept it and invoke his remedy by appeal to the higher court. . . .

"The counsel in any case may or may not be an abler or more learned lawyer than the judge, and it may tax his patience and his temper to submit to rulings which he regards as incorrect, but discipline and self-restraint are as necessary to the orderly administration of justice as they are to the effectiveness of an army. The decisions of the judge must be obeyed, because he is the tribunal appointed to decide, and the bar should at all times be the foremost in rendering respectful submission." (Footnotes omitted.)

On the basis of this principle, respondent contends that appellant's refusal to disclose the whereabouts of his client constituted contempt irrespective of whether or not the court erred in ruling that the information sought was not privileged.

In *Robertson v. Commonwealth,* 181 Va. 520, 536, 25 S.E.2d 352, 146 A.L.R. 966 (1943), an attorney was ordered by the trial court to produce certain evidence. The attorney refused on the ground that the evidence was within the attorney-client privilege protecting confidential communications. The trial court held the attorney in contempt and the attorney appealed. The Virginia court stated:

A judgment, decree or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void. [Citing authority.]

Where a court has jurisdiction of the parties and of the subject matter, and has the power to make the order or rulings complained of, but the latter is based upon a mistaken view of the law or upon the erroneous application of legal principles, it is erroneous. [Citing case.]

It is, of course, well settled that disobedience of, or

resistance to a void order, judgment, or decree is not contempt. [Citing authority.] This is so because a void order, judgment, or decree is a nullity and may be attacked collaterally.

But there is a vast difference between a judgment which is void and one which is merely erroneous. In 31 Am. Jur., Judgments, section 401, p. 66, it is said: "* * * a void judgment should be clearly distinguished from one which is merely erroneous or voidable. There are many rights belonging to litigants—rights which a court may not properly deny, and yet if denied, they do not render the judgment void. Indeed, it is a general principle that where a court has jurisdiction over the person and the subject matter, no error in the exercise of such jurisdiction can make the judgment void, and that a judgment rendered by a court of competent jurisdiction is not void merely because there are irregularities or errors of law in connection therewith. This is true even if there is a fundamental error of law appearing upon the face of the record. Such a judgment is, under proper circumstances, voidable, but until avoided is regarded as valid."

"Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law." Freeman on Judgments, 5th Ed., section 357, p. 744.

Consequently, the authorities are in accord that where the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt. Such order, though erroneous, is lawful within the meaning of contempt statutes until it is reversed by an appellate court.

. . . .

The same principle applies to the oral orders, commands and directions of the court, such as its rulings on the admissibility of evidence and the production of documents in the possession of a witness in the presence of the court. The fact that a witness may disagree with the court on the propriety of its ruling is, of course, no excuse for his not complying with it. The proper method of challenging the correctness of an adverse ruling is by an appeal and not by disobedience. [Citing cases.]

. . . .

The rule that an order directing a witness to answer questions or to produce documentary evidence in his possession, although erroneously made or entered, until reversed, must be obeyed, is subject to these exceptions:

(1) In view of the constitutional provisions, both State and Federal, that no one shall be compelled to furnish evidence against himself, a witness can not be punished for contempt for refusing to answer questions when such answers would incriminate him. [Citing cases.]

(2) A witness can not be compelled to divulge privileged matters which have been given to him in confidence. (Citing authority.)

Appellant seeks to come within this second exception.

We have quoted extensively from *Robertson, supra,* because it succinctly sets forth the principles here involved. The court in *Robertson* went on to hold that the trial court correctly ruled that the information sought was not a privileged communication and therefore affirmed the judgment of contempt.[3]

In *State ex rel. Sowers v. Olwell,* 64 Wn.2d 828, 833, 394 P.2d 681 (1964), we followed the general principles set forth in *Robertson,* stating:

On the basis of the attorney-client privilege, the subpoena duces tecum issued by the coroner is defective on its face because it requires the attorney to give testimony concerning information received by him from his client in the course of their conferences. The subpoena names the client and requires his attorney to produce, in an open hearing, physical evidence allegedly received from the client. This is tantamount to requiring the attorney to testify against the client without the latter's consent. RCW 36.24.080 makes testifying in a coroner's inquest similar to testifying in a superior court, and, therefore, the attorney-client privilege should be equally applicable to witnesses at a coroner's inquest. We, therefore, hold that appellant's refusal to testify at the inquest for the first reason stated by him was not contemptuous.

. . . .

Because the subpoena duces tecum in this case is in-

---

[3]*See Ex parte Enzor,* 270 Ala. 254, 117 So.2d 361 (1960), where attorney's contempt conviction was reversed on basis that the information the attorney refused to give the court was privileged.

valid, since it required the attorney to testify without the client's consent regarding matters arising out of the attorney-client relationship, the order of the trial court finding appellant to be in contempt and punishing him therefor is hereby reversed with directions to dismiss this proceeding.

Therefore, if we hold that the whereabouts of appellant's client was protected by the attorney-client privilege, then appellant's refusal to disclose the information to the court did not constitute contempt and we must reverse the trial court's judgment.

RCW 5.60.060(2), which we held to be merely declaratory of the common law in *State v. Emmanuel*, 42 Wn.2d 799, 259 P.2d 845 (1953), provides:

(2) An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

The attorney-client privilege is somewhat more comprehensively defined in CPE 37, which provides in part:

It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment,
. . . .

. . . The announced intention of a client to commit a crime is not included within the confidences which he is bound to respect. He may properly make such disclosures as may be necessary to prevent the act or protect those against whom it is threatened.

The purpose and justification for the attorney-client privilege has been explained as follows (Drinker, *supra,* p. 133):

To require the counsel to disclose the confidential communications of his client to the very court and jury which are to pass on the issue which he is making, would end forever the possibility of any useful relation between lawyer and client. It is essential for the proper presentation of the client's cause that he should be able to talk freely with his counsel without fear of disclosure. . . . The useful function of lawyers is not only to conduct litigation, but to avoid it, where possible, by

advising settlement or withholding suit. Thus, any rule that interfered with the complete disclosure of the client's inmost thoughts on the issue he presents would seriously obstruct the peace that is gained for society by the compromises which the counsel is able to advise. (Footnote omitted.)

*Also see* Formal Opinion 91 (1933), American Bar Association, Opinions on Professional Ethics 339 (1967).

The attorney-client privilege, as defined in Canon 37, is not absolute; but rather is subject to recognized exceptions. Drinker, *supra,* p. 133.

The exceptions which have arisen are the result of a balancing process in which the courts have had to weigh the benefits of the privilege against the public interest in the criminal investigation process as discussed in *Sowers, supra.*

As the privilege may result in the exclusion of evidence which is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege cannot be treated as absolute; but rather, must be strictly limited to the purpose for which it exists. With these general guidelines in mind, we turn to the specific issue which we must decide—namely, whether the whereabouts of appellant's client was privileged information.

Although we have not had occasion to consider this question before, it appears[4] that the general rule is as stated in *Ex parte Schneider,* 294 S.W. 736, 738 (Mo. App. 1927):

> [A]n address, given by a client to an attorney while consulting him in a professional capacity on a business matter, for the purpose of enabling the attorney to communicate with the client in respect thereto, is a privileged communication. [Citing authority.] If the client's residence has been concealed (as here), or if the client is in hiding for some reason or other, and the attorney knows his address only because the client has communicated it to him confidentially as his attorney for the purpose of being advised by him, and has not communicated it to the rest of the world, then the client's address

---

[4] Annotation 16 A.L.R.3d 1062 (1967).

12

is a matter of professional confidence, which the attorney may not be required to disclose. (Citing authority.)

As exceptions to this general rule, it has been held that the attorney of the plaintiff in an action may be compelled to disclose the address of his client where the purpose of the disclosure is: (1) making service of a court order, *Markevich v. Royal Ins. Co.*, 162 App. Div. 640, 147 N.Y.S. 1004 (1914); (2) obtaining security for costs, *see In re Annexation of Certain Territory to Village of Harvester*, 37 Ill. App. 2d 255, 185 N.E.2d 369 (1962); (3) fixing venue, *see Schneider, supra; Markevich, supra;* (4) determining the court's jurisdiction, *In re Illidge*, 162 Ore. 393, 91 P.2d 1100 (1939); *Schneider, supra; Markevich, supra;* (5) determining the existence of the plaintiff, *Illidge, supra; Schneider, supra;* (6) examining plaintiff before trial, *Schneider, supra; Corbett v. Gibson*, 18 Hun 49 (New York 1879); and (7) determining the nature and amount of the claim, *In re Philadelphia & Reading Coal & Iron Co.*, 27 F. Supp. 256 (D. C. Pa. 1939).

Further, it has been held that a defendant in an action is entitled to an order requiring plaintiff's attorney to disclose plaintiff's address before defendant can be compelled to try the action (*Bohling v. Bronson*, 130 App. Div. 895, 115 N.Y.S. 29 (1909)), provided the information is not desired for some improper ulterior purpose (*Drake v. New York Iron Mine*, 75 Hun 539, 27 N.Y.S. 489 (1894)). It has also been held that the attorney for the defendant may be required to disclose the defendant's address where the purpose of the disclosure was: (1) to secure service on defendant of an order of court requiring him to pay counsel fees and alimony pendente lite, *Richards v. Richards*, 64 Misc. 285, 119 N.Y.S. 81 (1909); or (2) to obtain service on an injunction in aid of the administration of justice. *See Schneider, supra.*

■ As observed by the court in *Schneider, supra*, however, these exceptions which require counsel to disclose the address of his client are applied only in instances where

it has been in the very action to which the client was a party during its pendency, while the relationship of at-

torney and client still existed, and because of facts relating to such action which rendered the disclosure necessary, in the interest of justice, to protect the rights of the adverse party or parties to the proceeding. At 739.

Conversely, an attorney will not be required to disclose the address of his client (1) when the client is not a party to the action in which the information is sought, *Schneider, supra; Neugass v. Terminal Cab Corp.,* 139 Misc. 699, 249 N.Y.S. 631 (1931); (2) when the client is not seeking the use of the courts, *Neugass, supra;* (3) when the action in which the client was involved has gone to judgment and the attorney-client relationship has ceased, *In re Trainor,* 146 App. Div. 117, 130 N.Y.S. 682 (1911); *Levy v. Coy, Hunt & Co.,* 64 Misc. 39, 117 N.Y.S. 949 (1909); (4) when the action involving the client has gone to judgment and the purpose in seeking the address is to enable the client to be pursued in subsequent actions, *Hyman v. Corgil Realty Co.,* 164 App. Div. 140, 149 N.Y.S. 493 (1914); *Levy, supra;* or (5) when the attorney is not representing any of the parties in an action and the purpose in seeking the address is to enable the plaintiff in the action to serve process on the attorney's client, *Brooklyn Sav. Bank v. Park Slope Realty Corp.,* 146 Misc. 4, 260 N.Y.S. 508 (1932). *See Sunga v. Lee,* 13 Ill. App. 2d 76, 141 N.E.2d 63 (1957).

All of the factors which have been held to be necessary prerequisites to compelling an attorney to disclose the address of his client are present in the case at bar: appellant has appeared in the action in which the address is sought; appellant's client is a party to that action and has sought the use of the courts; the action was still pending and had not gone to judgment; the attorney-client relationship still existed; the address was not sought for the purpose of pursuing the client in subsequent actions; and the information is necessary not only to protect the rights of a party adverse to the client, but also the interests of an innocent third party—the minor child. Therefore, in the instant case the address of appellant's client was not privileged information. *Accord, Jafarian-Kerman v. Jafarian-Kerman,* 424

S.W.2d 333 (Mo. 1967); *Falkenhainer v. Falkenhainer,* 198 Misc. 29, 97 N.Y.S.2d 467 (1950); *Burton v. Darnley,* 21 L.T.R. (n.s.) 292 (1869); *Ramsbotham v. Senior,* 21 L.T.R. (n.s.) 293 (1869); *Schneider, supra;* Formal Opinion 155 (1936), American Bar Association, Opinions on Professional Ethics 426 (1967); Opinion 70 (1960), Washington State Bar Association, Opinions of the Legal Ethics Committee 67 (1966).

The court is faced with the task of balancing society's interest in the free and open flow of communication between attorney and client, which the privilege promotes, against society's interest in the administration of justice by our courts on the basis of a full disclosure of the facts and with the affirmative assistance of attorneys, which the privilege discourages. On the basis of the reasoning of the authorities above discussed, we hold that under the facts hereof, appellant was not privileged to withhold his client's whereabouts from the court. The necessity for unhindered communication between attorney and client is outweighed, not so much by society's interest in having the truth disclosed as to crimes already completed, but rather by society's interest in protecting the present and future victims of the client. In other words, although we will not discard the privilege when the sole purpose in doing so is merely to punish the client for a wrong committed in the past, nevertheless we will not allow the shield of silence constructed by the privilege to aid the client in continuing his wrongdoing at the expense of other members of society.

The information sought by the court did not relate to a completed wrong, nor was the primary purpose of disclosure to punish the client for her misdeeds in the past; rather, the information relates to a continuing wrong which was being aided by the silence of the client's attorney. The primary purpose of disclosure is to protect a minor child's welfare which is, at least potentially, being harmed by the client's continuing wrongful actions.

In reaching this conclusion, we recognize that we may be imposing a Draconian rule on attorneys with respect to the

attorney-client privilege. Whenever a trial court orders an attorney to disclose information which the attorney conscientiously believes to be within the protection of the privilege, the attorney has two alternatives: (1) to obey the court and disclose the information; or (2) to disobey the court and appeal the resulting contempt citation to a higher court. If the attorney chooses the first alternative when, in fact, the desired information is privileged, there is authority for the proposition that the attorney has acted improperly, if not unethically. As stated in a concurring opinion in *People v. Kor,* 129 Cal. App. 2d 436, 447, 277 P.2d 94 (1954):

> Here the attorney was compelled to testify against his client under threat of punishment for contempt. Such procedure would have been justified only in case the defendant with knowledge of his rights had waived the privilege in open court or by his statements and conduct had furnished explicit and convincing evidence that he did not understand, desire or expect that his statements to his attorney would be kept in confidence. *Defendant's attorney should have chosen to go to jail and take his chances of release by a higher court.* (Italics ours.)

On the other hand, if the attorney follows his conscience and chooses the second alternative, and *if* this court agrees that the desired information was privileged, then the contempt citation is dismissed and the attorney vindicated. But in that second "if" lies the attorney's dilemma, as the contempt citation stands if this court holds with the lower court. Such a procedure might be justified if the application of the attorney-client privilege to any set of facts were clear and definite; but certainly not when, as here, the application of the privilege is rather obscure.

However, we do not believe it is necessary to leave appellant in this position. In *State v. Caffrey,* 70 Wn.2d 120, 422 P.2d 307 (1966), we recognized that punishment for contempt is within the discretion of the court. We follow our usual rule regarding review of discretionary matters and in so doing are impressed with the view stated by the court in *Appeal of the United States Sec. & Exch. Comm'n,* 226 F.2d 501, 520 (6th Cir. 1955):

An additional independent basis of our decision is that, even if appellant Timbers had been in error in his interpretation of the law and the binding effect of the Commission's rules and directives upon which he based his declination to produce the information demanded, the district judge abused his discretion in committing the attorney to imprisonment for contempt in the circumstances of the case. As was stated recently [February 11, 1955], in relation to an attorney's status "when standing upon his rights" not to divulge the contents of papers claimed to be privileged: "It is difficult to imagine the occurrence of anything beyond *pro forma* detention while the necessary steps are taken to get an appellate review." Chapman v. Goodman, 9 Cir., 219 F.2d 802, 807.

In our view, the foregoing recital of the judge's own words and actions demonstrates that he abused all justifiable discretion. An attorney is entitled to consideration of a claimed privilege not to disclose information which he honestly regards as confidential and should not stand in danger of imprisonment for asserting respectfully what he considers to be lawful rights. If the attorney's position, in the opinion of the trial court, is wrong to the point of contempt, he should be so adjudged; but substantial justice would demand that he be given the benefit of counsel and an opportunity for review by an appellate court before being deprived of his liberty with the resultant ignominy.

Accordingly, both the oral order and the written order adjudging and committing appellant for contempt of court are vacated and set aside. It is directed that appellant be completely absolved from any punishment for his refusal to answer the court's inquiry.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.