[No. 17817-6-II.   Division Two.   March 8, 1996.]

MELISSA DIETZ, *Individually and as Personal Representative, Appellant*, v. JOHN DOE, *Respondent*.

---

*Roblin J. Williamson, David W. Ballew,* and *Davies, Roberts & Reid,* for appellant.

*Craig A. Ritchie,* for respondent.

WIGGINS, J.* — Plaintiff's husband was killed in an automobile accident caused by an unknown driver who

---

*Judge Charles K. Wiggins was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

fled the scene of the accident. Plaintiff learned from a newspaper article that the unknown driver had contacted attorney Craig Ritchie about the accident. The trial court denied plaintiff's motion for an order to compel Ritchie to disclose the driver's identity. We hold that the attorney-client privilege protects the driver's identity from disclosure because the identity cannot be disclosed without simultaneously disclosing that the driver told Ritchie that the driver had been involved in the accident with plaintiff's husband. Accordingly, we affirm the trial court's order denying discovery.

Plaintiff's husband was traveling eastbound on Highway 101, following the unknown driver. The unknown driver turned left across the path of an oncoming dump truck. The truck driver braked and attempted to avoid plaintiff's husband, but lost control and collided with plaintiff's husband, who died in the crash.

Several days after the accident, the newspaper reported:

> An attorney is now handling the case of a motorist sought for questioning in connection with a fatal traffic accident which occurred last week, the State Patrol said Tuesday.
>
> The man's identity has not been released and it is unknown whether he has talked with Patrol troopers. Port Angeles attorney Craig Ritchie acknowledged Tuesday that the man had retained his services but had no further comment.

Plaintiff attempted to learn the identity of the unknown driver through the State Patrol, a private investigator, and advertisements in local papers—all without success. Plaintiff then commenced this action against John Doe.[1] Plaintiff's attorney asked Mr. Ritchie to disclose the name of his client, but Mr. Ritchie declined, asserting the

---

[1]Ritchie argues that the motion to compel is now moot, since three years have passed since the accident and John Doe has not been served. We decline to reach this issue, which was not raised at the trial court level, RAP 2.5(a), and which involves the factual issue whether the unknown driver willfully evaded service. *See Brown v. ProWest Transp. Ltd.*, 76 Wn. App. 412, 421, 886 P.2d 223 (1994); *Bethel v. Sturmer*, 3 Wn. App. 862, 866-67, 479 P.2d 131 (1970).

attorney-client privilege. Plaintiff's attorney and Mr. Ritchie agreed that plaintiff would bring a motion to compel disclosure.

Plaintiff moved for an order "compelling Craig A. Ritchie to disclose the name and address of his client who was involved in an automobile collision on May 24, 1989 as a result of which Morgan Dietz was killed." The trial court reviewed numerous authorities and concluded that Mr. Ritchie learned the driver's identity in confidence and that the identity was protected by the attorney-client privilege.

■■ We generally review discovery orders for abuse of discretion.[2] A trial court abuses its discretion when "discretion is exercised on untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion."[3] Here, the trial court held that the attorney-client privilege barred discovery. The trial judge did not believe that he had any discretion to grant discovery. This ruling was based on tenable grounds if the privilege applies, and untenable grounds if it does not. Accordingly, we review the ruling de novo to determine whether the attorney-client privilege protects the identity of the unknown driver.[4]

■ RCW 5.60.060(2) provides that "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." The policy behind this statutorily created privilege is to encourage free and open attorney-client communication by assuring the client

---

[2]*Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 629, 818 P.2d 1056 (1991); *Escalante v. Sentry Ins.*, 49 Wn. App. 375, 391, 743 P.2d 832 (1987), *review denied*, 109 Wn.2d 1025 (1988).

[3]*Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[4]*Cf. Drewett v. Rainier Sch.*, 60 Wn. App. 728, 731, 806 P.2d 1260 (whether a statue creates a privilege is a determination of law subject to de novo review), *review denied*, 117 Wn.2d 1003 (1991).

that his or her communications will not be directly or indirectly disclosed to others.[5]

■ Generally, the identity of an attorney's client is not a confidential communication protected by the attorney-client privilege.[6] There is, however, an important exception to this rule. The name of the client falls within the attorney-client privilege

> where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed . . . .[7]

Our Supreme Court has stated that this "legal advice" exception is limited to the purpose of the attorney-client privilege; the privilege does not apply merely because the identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client is in substance a disclosure of the confidential communication.[8]

No prior Washington case has held that a client's identity was privileged under the "legal advice" exception. But the exception has been applied to protect a client's identity in a number of cases from other jurisdictions. The decision of the Appellate Division of the New York Supreme Court in *D'Alessio v. Gilberg*[9] arises from facts similar to this case. Fiorito was killed in an accident with an unknown driver, and a newspaper reported that the unknown driver had retained an attorney. The administrator for Fiorito's estate sought to take the at-

---

[5]*Pappas v. Holloway*, 114 Wn.2d 198, 203, 787 P.2d 30 (1990).

[6]*Seventh Elect Church v. Rogers*, 102 Wn.2d 527, 531, 688 P.2d 506 (1984) (quoting *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977)).

[7]97 C.J.S. *Witnesses* § 283 e., at 803 (1957) (*quoted in Baird v. Koerner*, 279 F.2d 623, 633 (9th Cir. 1960), and *Seventh Elect Church*, 102 Wn.2d at 533)).

[8]*Seventh Elect Church*, 102 Wn.2d at 532-33.

[9]205 A.D.2d 8, 617 N.Y.S.2d 484 (1994).

torney's deposition to learn the driver's identity. The Appellate Division denied discovery, holding

> [d]isclosure of his identity would reveal his possible involvement in a crime in connection with that accident, which is the precise situation for which he sought legal advice. Under these circumstances his or her identity constitutes a confidential communication, the disclosure of which is prohibited by the dictates of the attorney-client privilege.[10]

In an earlier case, the New York Supreme Court reached an identical result under almost identical facts.[11]

Other courts have similarly applied the legal advice exception, holding that a client's identity was privileged when the circumstances were such that disclosure of the identity would reveal privileged information. In *Baird v. Koerner*,[12] the client retained the lawyer for tax advice and anonymously paid delinquent taxes through the attorney. The Ninth Circuit held that the client's identity was protected under the legal advice exception because disclosure would show " 'an acknowledgment of guilt on the part of [the] client of the very offenses on account of which the attorney was employed.' "[13] The Washington Supreme Court quoted *Baird* with approval in its description of the legal advice exception.[14] Other cases are collected in the R. M. Weddle, Annotation, *Disclosure of Name, Identity, Address, Occupation, or Business of Client as Violation of Attorney-Client Privilege*, 16 A.L.R.3d 1047 (1967).

The Fourth Circuit insightfully analyzed the legal advice exception in *N.L.R.B. v. Harvey*.[15] Acting on behalf of a client, an attorney hired a private investigator to fol-

---

[10]*D'Alessio*, 617 N.Y.S.2d at 486.

[11]*Neugass v. Terminal Cab Corp.*, 249 N.Y.S. 631 (1931).

[12]279 F.2d 623.

[13]*Baird*, 279 F.2d at 633.

[14]*Seventh Elect Church*, 102 Wn.2d at 533.

[15]349 F.2d 900 (4th Cir. 1965).

low the movements of a union organizer during an organizing campaign. Two employees were discharged from employment after the investigator reported that the organizer had visited their homes. The National Labor Relations Board sought to compel the attorney to disclose the identity of the client who had hired him, and the attorney resisted on the ground of privilege. The Fourth Circuit relied on Wigmore's definition of the elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.[16]

The Fourth Circuit recognized the legal advice exception, but observed that attorneys are sometimes employed, not to render legal advice, but in roles that nonlawyers could fulfill.[17] Where the attorney is not rendering legal advice, the identity of the client would not be privileged.[18] But if the attorney performs a task, such as hiring an investigator, for the purpose of rendering legal services, then the identity of the client would be privileged:

> In such a situation the client's communication, including those relating to the hiring of the detective, would be privileged because the legal services are indistinguishable from the non-legal. In the absence of mingled legal and non-legal services, no sound reason exists for courts to clothe in secrecy the identity of the person ordering the surveillance simply because a lawyer acted as his intermediary. Such an extension of the attorney-client privilege is not supported by

---

[16]*N.L.R.B. v. Harvey*, 349 F.2d at 904 (quoting 8 John Henry Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).

[17]349 F.2d at 906.

[18]349 F.2d at 906-07.

any authority and is contrary to the policy undergirding the privilege.[19]

The Fourth Circuit held that it could not determine from the lawyer's affidavit whether he had been retained to render legal services. Accordingly, the court remanded the matter for a full evidentiary hearing on the nature of the consultation, and on whether the lawyer had been engaged to perform legal services or simply to obtain information.[20]

We agree with the Fourth Circuit that courts should be cautious in applying the legal advice exception to the general rule that the *identity of a client is discoverable*. In *Dike v. Dike*, the Washington Supreme Court emphasized the need to limit the attorney-client privilege strictly to the purpose for which it was created:

> As the privilege may result in the exclusion of evidence which is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege cannot be treated as absolute; but rather, must be strictly limited to the purpose for which it exists.[21]

In the same case, the court described the purpose of the privilege:

> To require the counsel to disclose the confidential communications of his client to the very court and jury which are to pass on the issue which he is making, would end forever the possibility of any useful relation between lawyer and client. It is essential for the proper presentation of the client's cause that he should be able to talk freely with his counsel without fear of disclosure. . . . The useful function of lawyers is not only to conduct litigation, but to avoid it, where possible, by advising settlement or withholding suit. Thus, any rule that interfered with the complete disclosure of the

---

[19]349 F.2d at 907.

[20]349 F.2d at 907.

[21]*Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968).

client's inmost thoughts on the issue he presents would seriously obstruct the peace that is gained for society by the compromises which the counsel is able to advise.[22]

Thus, in analyzing the legal advice exception, a court must balance the need for full disclosure against the need for clients to consult freely with their attorneys in order to obtain legal advice.

The Washington Supreme Court narrowly interpreted the legal advice exception in *Seventh Elect Church*, 102 Wn.2d 527. There, attorneys for a judgment debtor relied on the attorney-client privilege in refusing to answer questions regarding the amount, source, and manner of payment of legal fees paid to them by their client.[23] The Supreme Court concluded that although the disclosure of such information may be incriminating to the judgment debtor, it was not "privileged" because it plainly would not convey the substance of the communication between the debtor and his attorneys.[24]

It is difficult to apply these principles to this case due to the limited nature of the record. While we commend counsel for their efforts to resolve this issue economically and informally, the resulting record is barely adequate to decide the issue. The parties have assumed that the unknown driver retained Ritchie to represent the driver in connection with the accident, that Ritchie's actions have been pursuant to this representation, and that Ritchie learned the client's name in confidence in connection with his representation of the client. These all seem reasonable assumptions, based on the newspaper report that the driver "retained" Ritchie, and that Ritchie is "now handling the case . . . ." The plaintiff never argued that the unknown driver might have waived the attorney-client

---

[22]*Dike*, 75 Wn.2d at 10-11 (quoting Henry S. Drinker, *Legal Ethics*, at 133 (1953)).

[23]The plaintiffs sought such information because they were having great difficulty satisfying their judgment against the defendant for conversion of church funds.

[24]*Seventh Elect Church*, 102 Wn.2d at 533.

privilege in some way. We accept these assumptions, which have not been challenged either here or in the trial court.

Accepting these assumptions, we hold that the trial court correctly concluded that the identity of Ritchie's client was protected by the attorney-client privilege. Under the circumstances of this case, revelation of the client's identity would necessarily disclose the client's communication to Ritchie that the client had been involved in the automobile accident.

The legal advice exception is fact specific, and will not shield every communication with a lawyer. The exception applies only if the transaction satisfies all eight of the elements of the attorney-client privilege listed by Wigmore: (1) The client must have sought legal advice; (2) from the attorney in his or her capacity as an attorney; (3) the communication must have been made in order to obtain legal advice; (4) in confidence; (5) by the client; (6) the client must wish to protect the client's identity; (7) from disclosure; and (8) the protection must not have been waived. For example, if the client had simply asked Ritchie to call the State Patrol and determine if the State Patrol knew his identity, then Ritchie would not have been acting as an attorney and the client's identity would not necessarily be protected. But since the parties have assumed that the client retained Ritchie to determine the client's obligations under the law, and that Ritchie called the State Patrol to learn facts in order to advise the client, the client's identity is protected.

We affirm the trial court's refusal to order Ritchie to disclose the identity of his client.

BRIDGEWATER, J., and FLEISHER, J. Pro Tem., concur.

Review granted at 129 Wn.2d 1029 (1996).