[No. 64002-5. En Banc.]
Argued February 11, 1997.     Decided April 24, 1997.

MELISSA DIETZ, *Individually and as Personal Representative, Petitioner,* v. JOHN DOE, *Respondent.*

---

838

*Davies, Roberts & Reid*, by *Roblin J. Williamson*, for petitioner.

*Ritchie Law Offices*, by *Craig A. Ritchie*, for respondent.

TALMADGE, J. — We are asked in this case to determine

if the privilege set forth in RCW 5.60.060(2) forbids the disclosure of the identity of an attorney's putative client in a civil case when that client may have had knowledge of, or been involved in, a serious automobile accident in which Morgan Dietz was tragically killed. We affirm the general rule in Washington that the identity of an attorney's client is not privileged under the statute. We also affirm the so-called "legal advice" exception to that general rule: where the disclosure of the client's identity necessarily reveals the essence of the communication between the attorney and client, the client's identity need not be disclosed.

In this case, because the record is inadequate to determine the nature of Doe's consultation of counsel and whether Doe waived any privilege, we remand the case to the Clallam County Superior Court for appropriate factual findings on these questions.

## ISSUES

1. Is an attorney required to disclose the identity of his or her putative client who was "involved" in an automobile accident?

2. Did the client waive any privilege under RCW 5.60.060(2) when the fact of representation was revealed in a newspaper story?

## FACTS

Morgan Dietz was killed in an automobile accident on May 24, 1989 on Highway 101 west of Port Angeles when his car collided with a dump truck that lost control while allegedly trying to avoid another car making an unsafe left turn. The driver of the car that made the unsafe left turn has never come forward, and the authorities do not know the driver's identity.

Within a week of the accident the following news article appeared in a local newspaper:

> PORT ANGELES - An attorney is now handling the case of a motorist sought for questioning in connection with a fatal traffic accident which occurred last week, the State Patrol said Tuesday.
>
> The man's identity has not been released and it is unknown whether he has talked with Patrol troopers. Port Angeles attorney Craig Ritchie acknowledged Tuesday that the man had retained his services but had no further comment.
>
> The Patrol wanted to question the motorist who reportedly turned left in front of a dump truck on Highway 101 west of Port Angeles Wednesday. The dump truck driver braked to avoid the driver, but his truck skidded on wet pavement, crossed over the centerline and collided with a van driven by Morgan L. Dietz II, the Patrol said. Dietz died of injuries sustained in the crash.

Clerk's Papers at 36. There is nothing in the record as to how the writer of this article obtained the information in it. Based on the newspaper article, the attorney for the Dietz family members and estate contacted attorney Craig Ritchie in an attempt to discover the name of the person who had retained him. Ritchie refused to divulge the information, asserting attorney-client privilege. The Dietzes undertook an investigation to discover the person's name, to no avail. The wife, children, and estate of Morgan Dietz filed the present action on May 22, 1992, for wrongful death and loss of consortium against the unknown driver, whom they have named John Doe.

Plaintiffs' attorneys and Ritchie agreed that the best way to resolve the issue of whether Ritchie had to disclose the putative client's name was to have the court hear a motion to compel Ritchie to disclose the name. On September 20, 1993, plaintiffs filed the motion in which they sought an order to compel Ritchie "to disclose the name and address of his client who was involved in an automobile collision on May 24, 1989 as a result of which Morgan Dietz died." Clerk's Papers at 28. In their motion, even though they admitted disclosure of the name may have criminal consequences because the driver had left

the scene of an accident, they asserted "disclosure of the name in and of itself would not establish the level of the individual's involvement nor the substance of his communication with Mr. Ritchie."[1] Clerk's Papers at 41. In response, Ritchie contended such a disclosure would inherently reveal a communication from a client, and should therefore be protected.

The motion was heard on October 15, 1993, before Clallam County Superior Court Judge Kenneth D. Williams, who denied the motion to compel.[2] In denying the motion to compel, the trial court stated identification of John Doe would plainly implicate him in the accident of May 24, 1989:

> Based on my review and analysis of this situation to require Mr. Ritchie to divulge the name of his client would necessarily require him to divulge the confidential communication which was given to him and from everything before me it would appear that that communication was made expressly for the purposes of maintaining the client's identity secret from the other parties who were involved or concerned and connected with this action, be that civil or criminal.

Clerk's Papers at 26.

The plaintiffs sought review of the denial of the order, which was granted, and the Court of Appeals affirmed denial of the motion. *Dietz v. Doe*, 80 Wn. App. 785, 911 P.2d 1025 (1996). We granted review.

---

[1]RCW 46.52.020(1) requires the driver of any vehicle involved in an accident resulting in the injury to or death of any person to stop at the scene of the accident and give certain information to the injured persons. Failure to stop or comply with any of the information requirements is a class C felony. RCW 46.52.020(4). A charge of vehicular homicide, a class B felony under RCW 46.61.520(2), is also a possibility. Although the present case is a civil lawsuit, Doe faces potentially serious criminal liability should his name be revealed and the prosecutor decide to file charges.

[2]The trial judge's written order stated he relied on a stipulation by Ritchie, without identifying that stipulation. While no stipulation by Ritchie appears in the record, counsel for Dietz advised the Court in a post-argument letter the stipulation the court referred to was not of record, and it involved the assumption that if deposed, Ritchie would assert attorney-client privilege.

## ANALYSIS

A. Attorney-Client Privilege in Washington

RCW 5.60.060(2) reads: "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communications made by the client to him or her, or his or her advice given thereon in the course of professional employment."[3]

■■ The attorney-client privilege exists in order to allow the client to communicate freely with an attorney without fear of compulsory discovery. *State ex rel. Sowers v. Olwell*, 64 Wn.2d 828, 832, 394 P.2d 681 (1964); *Pappas v. Holloway*, 114 Wn.2d 198, 203, 787 P.2d 30 (1990) (privilege encourages free and open communications by assuring that communications will not be disclosed to others directly or indirectly). The attorney-client privilege applies to communications and advice between an attorney and client and extends to documents that contain a privileged communication. *Pappas*, 114 Wn.2d at 203.

---

[3]RPC 1.6(a) also preserves a client's confidences and secrets: "A lawyer shall not reveal confidences or secrets relating to representation of a client unless the client consents after consultation except for disclosures that are impliedly authorized in order to carry out representation." The Terminology section of the Rules of Professional Conduct defines "confidence" as "information protected by the attorney-client privilege." Thus, a "confidence" is co-extensive with the attorney-client privilege. "Secret" refers to "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."

Here, disclosure of the client's name could be detrimental to the client. In *Seventh Elect Church v. Rogers*, 102 Wn.2d 527, 532, 688 P.2d 506 (1984), the Court noted Canon 4 of the Code of Professional Responsibility, containing substantially the same operative language as the cited definitions from the Terminology section of the current Rules of Professional Conduct, provided "considerably broader" protection of client information than the statutory attorney-client privilege. Thus, while the attorney-client privilege may not protect certain information amounting only to "confidences," it may be unethical and a violation of RPC 1.6(a) for the attorney to reveal information involving "secrets," i.e., "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." An attorney may reveal a secret, however, "pursuant to court order." RPC 1.6(b)(2). Thus, when we resolve the statutory attorney-client privilege question, we also resolve the RPC 1.6 issue.

■ Because the privilege sometimes results in the exclusion of evidence otherwise relevant and material, and may thus be contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege is not absolute; rather, it is limited to the purpose for which it exists. *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968); *State v. Maxon*, 110 Wn.2d 564, 567, 756 P.2d 1297 (1988) (refusing to recognize parent-child testimonial privilege). As the United States Supreme Court has said:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. " 'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.' " *United States v. Bryan*, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. WIGMORE, EVIDENCE § 2192, p. 64 (3d ed. 1940)).

*Jaffee v. Redmond*, 518 U.S. 1, 116 S. Ct. 1923, 1928, 135 L. Ed. 2d 337 (1996). Employing the attorney-client privilege to prohibit testimony must be balanced against the benefits to the administration of justice stemming from the general duty to "give what testimony one is capable of giving." *Bryan*, 339 U.S. at 331.

■ The initial inquiry for purposes of RCW 5.60.060(2) is whether an attorney-lient relationship or other protected relationship exists. "An attorney-lient relationship is deemed to exist if the conduct between an individual and an attorney is such that the individual subjectively believes such a relationship exists." *In the Matter of the Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983). However, the belief of the client will control only if it "is reasonably formed based on the attending circumstances, including the attorney's words or actions." *State v. Hansen*, 122 Wn.2d 712, 720,

862 P.2d 117 (1993) (quoting *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992)). The determination of whether an attorney-client relationship exists is a question of fact. *Bohn*, 119 Wn.2d at 363. The burden of proving the existence of the relationship and that the information the Dietzes sought fell within the privilege rested squarely with Doe. *R.A. Hanson Co. v. Magnuson*, 79 Wn. App. 497, 501, 903 P.2d 496 (1995), *review denied*, 129 Wn.2d 1010, 917 P.2d 130 (1996).

The trial court in its oral opinion did not address the question of whether Doe was Ritchie's client; the trial court assumed it, and made no explicit findings of fact or conclusions of law in its order regarding the existence of an attorney-client relationship between Doe and Ritchie. Similarly, the Court of Appeals did not address the question, stating only, "The parties have assumed that the unknown driver retained Ritchie to represent the driver in connection with the accident." *Dietz*, 80 Wn. App. at 793.

However, the existence of an attorney-client relationship or other protected relationship in this case is an unresolved issue. It was Doe's burden to make a factual showing to support the existence of a protected relationship, but there are no facts in the record to support a finding that Doe is Ritchie's client, or, if not a client, is otherwise entitled to the confidentiality the attorney-client privilege bestows. Ritchie's approach throughout has been to act as if that relationship did indeed exist, and to assert the client's privilege against revealing Doe's actual name. We have only Ritchie's word for the existence of the relationship, and he has contradicted himself. For instance, in the petitioners' Civil Appeals Statement at 1-2: "A motion was filed by Plaintiff to compel attorney Craig A. Ritchie to disclose the identity of 'John Doe' based on Mr. Ritchie's having acknowledged that he represented the individual." The reference here was to the newspaper article cited above. Apparently in direct response to this statement, in the Answer to Civil Appeals Statement at 1, which Mr. Ritchie signed, he wrote: "Craig Ritchie has not

acknowledged that he represents 'the individual [allegedly responsible for an accident][']. In fact, Craig Ritchie has denied such allegations." There is nothing in the record to show where or when Ritchie denied the allegations. Finally, in the Brief of Respondent, he stated:

> The information in the Appellants' Statement of the Case regarding the nature of the case is unknown to responding attorney, Craig A. Ritchie. Craig A. Ritchie has not been served with the Complaint nor been a party to the suit in any way. Appellants Statement of the Case sets forth that an article in a newspaper alleged certain things. No further factual showing has been made.

Resp't's Reply Br. at 1.

■ The trier of fact on the issue of the existence of an attorney-client relationship between Doe and Ritchie may not simply accept Ritchie's legal conclusion that Doe was his client. The trial court needed the facts of what actually occurred between Doe and Ritchie to decide the legal question of whether Doe was Ritchie's client.[4] Ritchie is a witness to those facts; his legal conclusions are interesting, but not dispositive. PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 11:10 at 978-81 (1993). *See also DiCenzo v. Izawa*, 68 Haw. 528, 535, 723 P.2d 171 (1986) (court cannot rely on attorney's mere claim relationship existed).

■ ■ In summary, the trial court lacked an adequate factual basis to establish an attorney-client relationship or other protected relationship, such as prospective client, existed between Doe and Ritchie. Doe had the burden of proof in the trial court, yet produced no evidence. We could conclude now, because of the absence of any competent evidence to support the existence of an attorney-client privilege or other protected relationship, that the trial court abused its discretion in denying the motion to compel discovery of John Doe's actual name.

---

[4]The Court of Appeals described the record in this case as "barely adequate." *Dietz*, 80 Wn. App. at 793. We agree.

However, judicial economy is best served if we remand this case to the trial court with instructions as to the rule of law in the event the trial court finds an attorney-client or other protected relationship.

## B. Disclosure of a Client's Identity

■■ ■■ The question of the disclosure of a client's identity has been addressed in Washington law. Ordinarily, the name of a client is not a confidential communication under the protection of the attorney-client privilege. *Seventh Elect Church v. Rogers*, 102 Wn.2d 527, 531, 688 P.2d 506 (1984). An exception to this general rule is the "legal advice" exception, "which bars disclosure 'where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought.'" *Id.* at 532 (quoting *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977)). An earlier case from the Court of Appeals for the Ninth Circuit set forth another definition of the "legal advice" exception:

> "The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed."

*Baird v. Koerner*, 279 F.2d 623, 633, 95 A.L.R.2d 303 (9th Cir. 1960) (quoting 97 C.J.S. *Witnesses* § 283e (1957)).

In *Seventh Elect Church*, the issue was whether information concerning the amount, source, and manner of payment of legal fees came under the protection of the attorney-client privilege. After discussing the "legal advice" exception, we concluded such information is not protected because it does not convey the substance of confidential communications between attorney and client. *Seventh Elect Church* at 533.

Similarly, in *State v. Sheppard*, 52 Wn. App. 707, 763

P.2d 1232 (1988), the Court of Appeals affirmed a trial court decision that an attorney was obligated to reveal the source of his clients' resources and the fee arrangements with them because such information did not come within the legal advice exception. The attorney contended the information would establish ties between his clients and other persons subject to a special inquiry judge investigation. Citing *Seventh Elect Church*, the Court of Appeals noted the legal advice exception, and its narrow scope, but held the exception inapplicable because

> There is no evidence or argument that the existence of a fee arrangement between Sheppard's clients and a third party would convey the substance of a confidential communication between Sheppard and his clients.

*Sheppard* at 712-13.

Other states have also adopted the legal advice exception, and no state has rejected it. *People v. Chapman*, 36 Cal. 3d 98, 679 P.2d 62, 69 (1984); *Anderson v. State*, 297 So. 2d 871, 875 (Fla. Dist. Ct. App. 1974); *State v. Bean*, 239 N.W.2d 556, 561 (Iowa) (citing *Baird*), *cert. denied*, 429 U.S. 824, 97 S. Ct. 76, 50 L. Ed. 2d 86 (1976); *Hughes v. Meade*, 453 S.W.2d 538, 540-41 (Ky. 1970) (citing *Baird*); *Ravary v. Reed*, 163 Mich. App. 447, 415 N.W.2d 240, 455 (1987); *D'Alessio v. Gilberg*, 205 A.D.2d 8, 617 N.Y.S.2d 484 (1994). The federal courts have also applied the legal advice exception. *See, e.g., N.L.R.B. v. Harvey*, 349 F.2d 900, 16 A.L.R.3d 1035 (4th Cir. 1965); RICE, § 6:15, at 443 n.75 (citing cases).

A Florida court decided a case strikingly similar to the present case:

> More than 24 hours after the accident in question, a person came to see attorney Krischer at his law office. He told Krischer something to the effect, "My name is 'so-and-so' and I think I may have been involved in the accident described in the paper." He asked Krischer to contact the authorities and attempt to negotiate a resolution of the matter. He instructed Krischer not to reveal his identity, but authorized him to do

what was reasonably necessary in order to negotiate a settlement of the matter. Krischer asked another attorney, Richardson, to negotiate with the state attorney on behalf of the client. Krischer explained later that he wanted to guard against inadvertently stating privileged information, as well as guarding against the possibility of police surveillance of his law office.

*Baltes v. Doe*, 57 U.S.L.W. 2268 (Fla. 15th Jud. Cir. Nov. 8, 1988) (No. CL-88-1145-AD). The state sought the name of Krischer's client, and Krischer refused to divulge it, claiming attorney-client privilege. The court's reasoning is instructive:

> However, the information sought from Krischer is not just a name. What is sought is his testimony along these lines: "I have been contacted by a person by the name of so-and-so. That client tells me that he was involved in the accident in question." Clearly, such a statement contains communications from client to attorney. . . . Surely, the client didn't expect Krischer to pick up the telephone and report him to the police. Surely, the client didn't expect that his attorney could be subpoenaed and required to reveal what he had just told him.

*Id.* The Florida court held the privilege extended to the client's identity.

The present case, based on the sparse record before us, indicates that revelation of Ritchie's client might implicate the content of the client's communication with him. Doe sets forth a hypothetical deposition in which the plaintiffs are seeking Doe's name from Ritchie:

> Plaintiffs' attorney: What is the name of your client?
>
> Ritchie: Which one?
>
> Plaintiffs' attorney: The one who told you he may have been involved in an accident.

Resp't's Supp. Br. at 3. This brief dialogue cogently demonstrates that Ritchie may not be able to reveal Doe's name without simultaneously revealing Doe told him he was involved in the accident of May 24, 1989. The revela-

tion could unavoidably convey some of the substance of the communication between Doe and Ritchie, and thus violate the attorney-client privilege.

The Dietzes argue Doe may not even have been the motorist involved in the accident, but a passenger or witness to the accident. If true, they contend, there is no prejudice to the privilege in identifying Doe.[5]

Ultimately, the record in this case is inadequate as to the content of the consultation between Doe and Ritchie. We simply do not know the reason or reasons for which Doe contacted Ritchie or the nature of the services provided. We agree with the Court of Appeals that the legal advice exception to disclosure of a client's identity applies in Washington. In light of the need to balance the policy benefits of the attorney-client privilege against the desirability of full information in fact-finding, we believe this exception must be narrow, and to that end adopt the eight-part test Wigmore promulgated:

> (1) The client must have sought legal advice; (2) from the attorney in his or her capacity as an attorney; (3) the communication must have been made in order to obtain legal advice; (4) in confidence; (5) by the client; (6) the client must wish to protect the client's identity; (7) from disclosure; and (8) the protection must not have been waived.

8 JOHN HENRY WIGMORE, EVIDENCE § 2292 at 554 (McNaughton rev. 1961). In deciding whether the legal advice exception applies, the trial court should be guided by these principles.

---

[5]The example given by the Court of Appeals is instructive:

"[I]f the client had simply asked Ritchie to call the State Patrol and determine if the State Patrol knew his identity, then Ritchie would not have been acting as an attorney and the client's identity would not necessarily be protected. But since the parties have assumed that the client retained Ritchie to determine the client's obligations under the law, and that Ritchie called the State Patrol to learn facts in order to advise the client, the client's identity is protected."

*Dietz*, 80 Wn. App. at 794.

## C. Waiver

A salient element of the Wigmore test is whether the privilege was waived and we note it separately because neither the parties nor the courts below have given adequate attention to this element, although the facts certainly suggest its possible significance. The possibility of waiver of the privilege is potentially important, given the absence of information in the record about how the newspaper learned Ritchie made inquiries to the State Patrol on behalf of Doe. The attorney-client privilege can ordinarily be waived only by the client, to whom the privilege belongs. *State ex rel. Sowers v. Olwell*, 64 Wn.2d 828, 833, 394 P.2d 681 (1964). However, when the attorney "is authorized to speak and act for the client on particular matters, disclosures by the attorney that are within the scope of that authority waive the privilege to the same extent as disclosures by the client." RICE, *supra* § 9:10 at 9-19 (and cases cited). Additionally, waiver may occur when the communication is made in the presence of third persons on the theory that such circumstances are inconsistent with the notion the communication was ever intended to be confidential. JOHN WESLEY HALL, JR., PROFESSIONAL RESPONSIBILITY OF THE CRIMINAL LAWYER § 29:14, at 921-22 (2d ed. 1996); Michael G. Walsh, Annotation, *Applicability of Attorney-Client Privilege to Communications Made in Presence of or Solely to or by Third Person*, 14 A.L.R. 4TH 594 (1982).

In the present case, the language of the news story carries some implication that Doe may have talked to someone about the accident *before* consulting Ritchie. The story indicates Ritchie "acknowledged" Doe retained his services.

In developing an adequate record for the decision on the privilege, the trial court must determine if Doe waived the privilege either by his own disclosures or by his authorization of Ritchie's disclosures.

## CONCLUSION

We again affirm the general rules of attorney-client priv-

ilege under RCW 5.60.060(2). The privilege is imperative to preserve the sanctity of communications between clients and attorneys. The party seeking to assert the privilege bears the burden of proving the existence of the attorney-client relationship or other protected relationship. An attorney's bare claim of the privilege is not dispositive. The client must also prove the privilege extends to the communication at issue.

While the name of the client is ordinarily not protected by the privilege, we expressly adopt the Wigmore formulation of the so-called legal advice exception, which protects the identity of the client where the revelation of the client's identity would necessarily reveal the essence of the attorney-client communications.

In the present case, we remand this matter to the trial court for a hearing on the following questions: (1) Did an attorney-client relationship or relationship entitled to the privilege exist between Ritchie and Doe? (2) What was the nature of Doe's consultation of Ritchie? (3) Assuming the privilege applied, did the legal advice exception as discussed herein apply? (4) Did Doe waive the privilege, particularly insofar as his existence was revealed in the local newspaper?

We are also mindful of Doe's possible right to confidentiality. The trial court should take such steps as may be appropriate to protect Doe's confidentiality pending full disposition of these factual issues. The trial court may choose to ascertain the facts by directing interrogatories to Doe, by holding in camera proceedings, or by any other means it sees fit, while always taking appropriate steps to assure Doe's confidentiality pending the outcome of the case.

The order of the trial court denying the motion to compel is reversed and the case remanded to the Clallam County Superior Court for further proceedings consistent with this opinion.

DOLLIVER, SMITH, GUY, and MADSEN, JJ., concur.

ALEXANDER, J. (concurrence/dissent) — I readily agree with the majority's conclusion that an attorney may not reveal the identity of his or her client, if doing so would necessarily reveal the essence of attorney-client communication. I part company with the majority, however, insofar as it holds that we should remand to the trial court for a hearing to determine (1) whether attorney Ritchie had an attorney-client relationship with Doe; (2) what the nature of Doe's consultation was with Ritchie; (3) whether the legal advice exception applies, even assuming a privilege; and (4) whether Doe waived the privilege.

I have two reasons for opposing a remand. My first reason is a purely practical concern. In my view, the problems in conducting the hearing will be immense. If, as the majority suggests, such a hearing requires Doe to appear before the court, albeit in camera, it will be difficult, if not impossible, to assure Doe's confidentiality.

My second and more substantive reason for opposing remand is that neither party to this case has suggested that Ritchie did not represent the driver, Doe, in connection with the accident that led to the death of Melissa Dietz's husband. Furthermore, no one contends that Ritchie's actions were not taken pursuant to that representation. Finally, the plaintiff did not argue that the unknown driver might have waived the attorney-client privilege in some way. The plaintiff's argument was simply that the attorney-client privilege does not protect the name of the client. Considering the posture of this case, it is inappropriate for this court to raise these issues sua sponte and order a hearing for the purpose of addressing them.

Although I must concede, as did the Court of Appeals, that the record here is extremely limited, it is apparent that the parties before us assumed for purposes of presenting a defined legal issue that the elements necessary to the existence of the attorney-client privilege were here. That being the case, the trial court and the Court of Appeals properly concluded that the client's identity is protected. I, therefore, dissent in part.

DURHAM, C.J., and JOHNSON and SANDERS, JJ., concur with ALEXANDER, J.