[No. 39296-4-I. Division One. March 30, 1998.]

THE STATE OF WASHINGTON, *Appellant*, v. DAVID WAYNE GRANACKI, *Respondent*.

*Norm Maleng, Prosecuting Attorney*, and *Amy Freedheim, Deputy*, for appellant.

*Debra S. Redford* and *Bruce L. Brown* of *Society of Counsel Representing Accused Persons*, for respondent.

AGID, J. — The State appeals the trial court's dismissal of its case against David Granacki based on the conduct of one of the State's witnesses, a police detective, who remained in the courtroom to assist the prosecutor. The State concedes that the witness's conduct was improper but argues it was not so egregious that dismissal was warranted. We disagree and affirm the trial court's dismissal of the underlying action.

## FACTS

Granacki was charged with two counts of second degree robbery, one count of attempted second degree robbery, one

count of third degree theft, and one count of fourth degree assault. When the case proceeded to trial in July 1996, the trial court granted an agreed motion to exclude witnesses but allowed the deputy prosecutor to choose one police officer to remain in the courtroom to assist at counsel table during trial. That officer was Detective Steven Kelly of the Kent Police Department. After the jury was impaneled on August 5, the State introduced Kelly to the jury as the "lead detective" in the case. Kelly was present when the court informed the jury that all parties had been instructed to have no contact with the jurors.

During a 15-minute recess on the second morning of trial, defense counsel left the courtroom, leaving his notebooks and legal pads at counsel table. The legal pads contained notes about communications between Granacki and his attorneys, trial strategy and tactics, and communications between his attorneys. When defense counsel returned to the courtroom just before the court reconvened, the court clerk told him she had observed Detective Kelly looking at the top page of a legal pad on defense counsel's table when she returned to the courtroom a few minutes earlier. When defense counsel returned to the courtroom shortly before the end of lunch recess, Detective Kelly was engaged in "earnest" conversation with a sitting juror in the hall outside the courtroom within earshot of other jurors waiting for the door to be unlocked.

After court reconvened, the defense moved for a mistrial based on Detective Kelly's actions. The clerk was sworn and testified that Detective Kelly was already looking at defense counsel's notes when she first saw him. She did not know how long he had been looking at them when she walked in, but she watched him for several seconds as he continued to read what was on the tablet before he noticed her and moved away. Detective Kelly admitted that he had looked at defense counsel's materials. He claimed, however, that he had simply seen his name at the bottom of the top page of one of the tablets on the table, looked at his name, and did not read any other notes. Defense counsel told the

judge that the detective's name was not written near the bottom of the top page of any of his tablets.[1]

Detective Kelly also admitted that he engaged in a conversation with a juror despite the trial court's order that witnesses have no contact with jurors. He explained that he believed his obligation to the court was only to avoid discussing specific facts of the case with jurors. When a juror approached him and asked him how long he had been an investigator, he answered the question and continued the conversation. He and the juror spoke about the juror's son, that the $10 the jurors received for their service was barely enough to cover lunch and parking, and the imminent opening of the Regional Justice Center in Kent.

At the conclusion of the evidentiary hearing, the trial court granted the defense motion for a mistrial based on Detective Kelly's misconduct. The court requested further briefing and argument on the question whether dismissal was warranted. At the conclusion of the hearing on that issue, the trial court found that Detective Kelly intentionally read defense counsel's notes and that his testimony about reading them was not credible, both because it was inconsistent with the court clerk's testimony and because no page of notes matched his description of what he said he was looking at. It also found that the detective had disregarded the court's order prohibiting contact with the jurors. The court concluded that the detective's actions violated Granacki's rights to due process and effective representation by counsel. It dismissed the case with prejudice.[2]

## DISCUSSION

The State concedes that Detective Kelly's actions

---

[1]Copies of defense counsel's notes are included in the record under seal; on no page of those notes is the detective's name written near the bottom of the page.

[2]Although the procedure the trial court used was not an issue on appeal, we note that its careful, thorough approach to deciding the mistrial motion contributes to our conclusion that there was no abuse of discretion.

in reading defense counsel's notes and engaging in conversation with a juror constituted "government misconduct" and does not contest the mistrial. But the State contends, based on CrR 8.3(b), that dismissal is warranted only if the defendant demonstrates he was prejudiced by the misconduct.

While the trial court cited CrR 8.3 as an alternate basis for dismissing the case, it relied primarily on the Supreme Court's decision in *State v. Cory*.[3] There, the trial court dismissed a criminal case after it discovered that the sheriff had taped conversations between the defendant and his attorney in the jail.[4] The Supreme Court observed that a defendant cannot receive effective representation unless he is able to confer with his attorney in private.[5] It noted that intrusion by the State into a defendant's privileged communications with counsel violates not only the defendant's right to effective representation by counsel, but his right to be protected against unreasonable searches and to due process of law.[6] Even "high motives and zeal for law enforcement cannot justify spying upon and intrusion into the relationship between a person accused of [a] crime and his counsel."[7] For that reason, the Court held that, where the State intrudes on a defendant's right to effective representation by intercepting privileged communications between an attorney and his client, the only adequate remedy is dis-

---

[3]62 Wn.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352 (1963). A trial court's decision to dismiss an action based on *State v. Cory* and under CrR 8.3(b) is reviewed for abuse of the court's discretion. *State v. Starrish*, 86 Wn.2d 200, 209, 544 P.2d 1 (1975). Even under CrR 8.3(b), the burden is on the State to prove beyond a reasonable doubt that there was no prejudice to the defendant. *See State v. Sherman*, 59 Wn. App. 763, 771, 801 P.2d 274 (1990).

[4]*Cory*, 62 Wn.2d at 378.

[5]*Id.* at 374.

[6]*Id.* at 375.

[7]*Id.* at 374-75 (quoting *Caldwell v. United States*, 205 F.2d 879 (D.C. Cir. 1953)).

missal.[8] This is because there is no meaningful way to isolate the prejudice resulting from such interference even if a new trial is granted.[9] As the Court observed, " '. . . [t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' "[10]

The State argues that we should decline to apply *Cory* to the facts of this case because the violation of Granacki's right to counsel was not as egregious as that in *Cory*. While the intrusion here was less extensive than the eavesdropping in *Cory*, what Detective Kelly examined when he looked at defense counsel's notes was essentially a distillation of conversations Granacki had had with his attorneys. As such, it was analogous to the conversations recorded by the sheriff in *Cory*. In addition, because the incident here took place in the courtroom itself, it was also an abuse of the trust the court had placed in the detective by permitting him to remain to assist the deputy prosecutor. *Cory* makes clear that *any* intrusion into a defendant's confidential communications with his attorney is sanctionable.[11]

 There is also more than one purpose for dismissing a case where the State violates a defendant's right to communicate privately with his or her attorney. The dismissal not only affords the defendant an adequate remedy but discourages "the odious practice of eavesdropping on privileged communication between attorney and client."[12] As the *Cory* court noted, there is no way to isolate the prej-

---

[8]*Id.* at 378. "No conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel." *Id.* at 376 (quoting *Glasser v. United States*, 315 U.S. 60, 76, 62 S. Ct. 457, 467, 86 L. Ed. 680 (1942)).

[9]*Id.* at 377.

[10]*Id.* at 376 (quoting *Glasser*, 315 U.S. at 76).

[11]*Id.* at 375.

[12]*Id.* at 378.

udice resulting from such an intrusion.[13] Where the behavior is egregious, as it was here, the trial court does not abuse its discretion by presuming there was prejudice to the defendant's right to counsel. It is true that Detective Kelly had not communicated what he saw to the deputy prosecutor when the defense moved for a mistrial. But that does not prevent what he read from affecting either his own testimony or comments he made to the deputy prosecutor during trial.

We recognize this case is unusual. Normally misconduct does not require dismissal absent actual prejudice to the defendant. *See, e.g., State v. Koerber,* 85 Wn. App. 1, 931 P.2d 904 (1996). Even then, the trial court may properly choose to impose a lesser sanction because this is a classic example of trial court discretion. Had the court chosen to ban Detective Kelly from the courtroom, exclude his testimony and prohibit him from discussing the case with anyone, we would not find an abuse of its discretion. But, based on the trial judge's evaluation of all the circumstances and Detective Kelly's credibility, the sanction he imposed was also within his discretion.

Affirmed.

BECKER and ELLINGTON, JJ., concur.