231 P.3d 853 (2010)
STATE of Washington, Appellant,
v.
James Martin PERROW, Respondent and Cross-Appellant.
No. 27894-8-III.
Court of Appeals of Washington, Division 3.
May 25, 2010.
*854 Jennifer R. Richardson, Okanogan County Prose Atty. Ofc., Okanogan, WA, for Appellant.
Jeffrey David Cohen, Law Office of Jeffrey D. Cohen, Michael Paul Iaria, Law Office of Michael Iaria, PLLC, Seattle, WA, for Respondent/Cross-Appellant.
BROWN, J.
¶ 1 The State appeals the trial court's dismissal of its child molestation prosecution against James Martin Perrow based upon the State's violation of Mr. Perrow's attorney-client privilege. The trial court found a detective had wrongfully seized attorney-client writings while executing a search warrant, examined and copied the writings, and delivered the writings to the State's prosecution team before charges were filed. The State contends the trial court abused its discretion in dismissing the charges because (1) the Sixth Amendment right to counsel had not attached when the writings were seized; (2) Mr. Perrow failed to establish the writings were protected by the attorney-client privilege; and (3) Mr. Perrow waived the privilege. We disagree, do not reach Mr. Perrow's cross-appeal challenging the search warrant, and affirm.

FACTS
¶ 2 The facts mainly derive from the trial court's unchallenged findings of fact following Mr. Perrow's motion to dismiss for violation of the attorney-client privilege. Since the court's findings are unchallenged, they are verities on appeal. State v. Levy, 156 Wash.2d 709, 733, 132 P.3d 1076 (2006).
¶ 3 In October 2007, Detective Craig Sloan began investigating Mr. Perrow's alleged sexual abuse of his daughter, A.P. On October 26, Detective Sloan called A.P. and told her he would assist her with obtaining a civil anti-harassment protection order against her father. After speaking with A.P., the detective contacted an Okanogan County prosecuting attorney. A civil protection order was issued against Mr. Perrow on November 13. On or about November 14, Detective Sloan called Mr. Perrow and informed him of A.P.'s allegations. Detective Sloan then prepared an affidavit for a search warrant of Mr. Perrow's home.
¶ 4 Mr. Perrow received a copy of the protection order on November 17 and contacted Michael Vannier, an attorney, on or about November 19. Mr. Vannier agreed to represent Mr. Perrow on the civil protection order matter as well as the potential criminal charges. On November 20, Mr. Vannier met with Mr. Perrow and asked him to gather information about A.P.'s allegations and provide him with a "written narrative" of the matters. Mr. Perrow prepared the requested materials for his attorney.
¶ 5 On November 29, Detective Sloan and other law enforcement officers executed a search warrant at Mr. Perrow's home. Detective Sloan seized written materials from Mr. Perrow's residence, including two composition books, some notes, and a yellow note pad. During the search, Mr. Vannier received a phone call from either Mr. Perrow or his wife informing him that Detective Sloan was taking the materials Mr. Perrow had prepared for Mr. Vannier. Mr. Vannier told the caller to tell the officer that the materials were protected by the attorney-client privilege. Mr. Perrow told Detective Sloan that the seized items had been prepared for Mr. Vannier. Detective Sloan removed the items from Mr. Perrow's home and took them to the Okanogan County sheriff's office where he read and analyzed them.
¶ 6 Detective Sloan observed that the documents appeared to have been written after Mr. Perrow was served with the protection order on November 17. He read through the *855 documents page by page and compared them with what Mr. Perrow had said on the phone. Detective Sloan prepared a written analysis of the documents. He forwarded his report and the seized documents to the prosecutor's office.
¶ 7 On December 17, the State charged Mr. Perrow with two counts of child molestation. Mr. Perrow moved to dismiss based on unjustifiable interference of the right to counsel, violation of the attorney-client privilege, and prejudicial governmental misconduct under CrR 8.3(b). He argued that the seized documents were clearly meant for his attorney and that Detective Sloan knew this at the time he seized them.
¶ 8 The court granted Mr. Perrow's motion, concluding Mr. Vannier represented him at the time of the seizure on the civil and the criminal matters and therefore the seized items were protected by the attorney-client relationship. It concluded the detective's conduct violated Mr. Perrow's constitutional right to counsel and his right to privileged communication with his attorney under RCW 5.60.060(2)(a). It did not address Mr. Perrow's CrR 8.3(b) argument. Based on Detective Sloan's communication to the prosecutor's office about the contents of the writings, the court concluded suppression was not an adequate remedy and dismissed the charges. The State appealed.

ANALYSIS
¶ 9 The issue is whether the trial court erred in granting Mr. Perrow's motion to dismiss for constitutional violations of the right to counsel and violation of the attorney-client privilege. We review a trial court's decision to dismiss criminal charges for an abuse of discretion. State v. Michielli, 132 Wash.2d 229, 240, 937 P.2d 587 (1997). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 10 The State first contends the trial court abused its discretion dismissing the case because Mr. Perrow's Sixth Amendment right to counsel had not attached when the writings were seized. It argues his right to counsel did not attach until charges were later filed and he failed to establish the writings were protected by the attorney-client privilege under RCW 5.60.060(2)(a). Mr. Perrow responds that the State's arguments are disposed of by the trial court's unchallenged findings establishing he prepared the writings at his counsel's request to obtain legal advice on the very matters under investigation by Detective Sloan. Mr. Perrow argues privilege attachment is immaterial; the relevant inquiry is whether the attorney-client privilege violation was so egregious that dismissal was the sole remedy considering the "conduct is by definition so egregious that prejudice is presumed and dismissal warranted." Br. of Appellant at 26.
¶ 11 Initially, we examine whether the seized writings were privileged attorney-client communications. Washington's attorney-client privilege is found at RCW 5.60.060(2)(a).[1] The privilege applies to communications and advice between an attorney and client and extends to documents that contain a privileged communication. Dietz v. Doe, 131 Wash.2d 835, 842, 843, 935 P.2d 611 (1997). It applies to any information generated by a request for legal advice. Soter v. Cowles Publ'g Co., 131 Wash.App. 882, 130 P.3d 840, aff'd, 162 Wash.2d 716, 174 P.3d 60 (2007).
¶ 12 "The attorney-client privilege exists in order to allow the client to communicate freely with an attorney without fear of compulsory discovery." Dietz, 131 Wash.2d at 842, 935 P.2d 611. The privilege encourages a client to make a full disclosure to his or her attorney, enabling the attorney to render effective legal assistance. R.A. Hanson Co. v. Magnuson, 79 Wash.App. 497, 502, 903 P.2d 496 (1993), review denied, 129 Wash.2d 1010, 917 P.2d 130 (1996). Whether an attorney-client relationship exists is a question of fact. Dietz, 131 Wash.2d at 844, *856 935 P.2d 611; Bohn v. Cody, 119 Wash.2d 357, 363, 832 P.2d 71 (1992). The defendant has the burden of establishing the existence of the attorney-client privilege. R.A. Hanson, 79 Wash.App. at 501, 903 P.2d 496.
¶ 13 Dietz gives an eight-part test to guide courts in determining if an attorney-client relationship exists: (1) the client must have sought legal advice; (2) from an attorney; (3) the communication was made to obtain legal advice; (4) in confidence; (5) by the client; (6) the client must wish to protect his identity; (7) from disclosure; and (8) the protection must not have been waived. Dietz, 131 Wash.2d at 849, 935 P.2d 611.
¶ 14 The State argues Mr. Perrow did not show the seized materials were intended for his attorney; and even if they were privileged, Mr. Perrow waived the privilege because many of the seized documents were made public record in Mr. Perrow's protection order case. We are not persuaded. The court's unchallenged findings unequivocally establish the seized writings were intended for Mr. Vannier and no evidence shows the materials were used in the protection order proceedings.
¶ 15 The findings establish: (1) prior to the execution of the search warrant on November 28, 2007, Mr. Perrow retained the services of Mr. Vannier, an attorney; (2) Mr. Vannier's representation involved the defense of a civil protection order filed by A.P., as well as representation during the investigative stage of the potential criminal charges that could be filed as a result of A.P.'s allegations; (3) Mr. Perrow was aware of A.P.'s allegations based on his conversation with Detective Sloan on or about November 14, 2007; (4) Mr. Vannier first met with Mr. Perrow on November 20, 2007 after previously speaking with him by telephone and receiving faxed documents concerning the allegations; (5) Mr. Vannier asked Mr. Perrow to provide him with information about A.P. and her allegations; (6) During the November 20, 2007 meeting, Mr. Vannier asked Mr. Perrow to gather additional information and to put that information into writing; (7) Mr. Perrow prepared written materials for his attorney which consisted of a green composition book, a black composition book, miscellaneous notes located in his office, and a yellow note pad; and (8) Mr. Vannier met with Mr. Perrow on November 27, 2007 to review the information and discuss the case.
¶ 16 Based on these findings, the court concluded "[a]n attorney/client relationship had been formed and existed at the time the papers and notebooks were seized on November 28, 2007 inasmuch as defendant sought and received legal assistance from Mr. Vannier on matters related to the civil protection petition filed by AP and the active criminal investigation." Clerk's Papers (CP) at 12. And, the court concluded Mr. Perrow satisfied the Dietz test because: (1) Mr. Perrow sought specific legal advice; (2) from Mr. Vannier in his capacity as an attorney; (3) the papers and notebooks were prepared and made to obtain legal advice, outline strategy and prepare a defense; (4) in confidence; (5) by Mr. Perrow; (6) the materials were intended for his attorney; (7) they were not for disclosure; and (8) the desire for protection was not waived.
¶ 17 It follows from the court's conclusions that the writings seized from Mr. Perrow's residence were protected by the attorney-client privilege and the State's seizure of these materials violated that privilege. Given the violation, the next inquiry is whether dismissal was the appropriate remedy. The State contends dismissal is an extraordinary remedy available only when the accused's rights have been materially prejudiced, affecting his right to a fair trial. It argues Mr. Perrow's Sixth Amendment right to counsel had not attached when the writings were seized and he fails to show egregious governmental misconduct justifying dismissal under CrR 8.3(b). Mr. Perrow's responsive arguments are exactly the opposite.
¶ 18 Here, the trial court relied primarily on State v. Cory, 62 Wash.2d 371, 382 P.2d 1019 (1963) to support the dismissal. The Cory court analyzed government intrusion into the attorney-client relationship. Mr. Cory met with his attorney to discuss his case in a private jail room, where the sheriff had secretly installed a microphone. Id. at 372, 382 P.2d 1019. The trial court excluded the evidence derived from the eavesdropping but declined to dismiss the case. Id. at 378, *857 382 P.2d 1019. The Supreme Court dismissed, stating:
There is no way to isolate the prejudice resulting from an eavesdropping activity, such as this. If the prosecution gained information which aided it in the preparation of its case, that information would be as available in the second trial as in the first.
Id. at 377, 382 P.2d 1019. The Cory court noted effective representation requires a defendant to be able to consult with his or her attorney in private. Id. at 373-74, 382 P.2d 1019.
¶ 19 The State argues Cory is distinguishable because Mr. Perrow's Sixth Amendment right to counsel had not attached at the time of the search and Detective Sloan did not purposely intercept communication between Mr. Perrow and his attorney. We disagree. First, we need not evaluate if the State's conduct violated Mr. Perrow's constitutional rights to counsel because the Cory court observed that in addition to the Sixth Amendment right to counsel, the State's eavesdropping violated the attorney-client communications privilege established in RCW 5.60.060(2).
¶ 20 Considering the State's egregious behavior, Mr. Perrow establishes the seized writings were protected under RCW 5.60.060(2). Under Cory, dismissal is the sole adequate remedy when, like here, the State intercepts privileged communications between an attorney and client. Id. at 378, 382 P.2d 1019. It is not possible to isolate the prejudice resulting from the intrusion. Id. at 377, 382 P.2d 1019; see also State v. Granacki, 90 Wash.App. 598, 603-04, 959 P.2d 667 (1998) (when the State's violation of the attorney-client privilege is egregious, the trial court does not abuse its discretion in presuming prejudice).
¶ 21 The State's conduct is analogous to that in Cory. The court's unchallenged findings establish: (1) Mr. Perrow informed Detective Sloan during the search that the written materials were for Mr. Vannier; (2) Detective Sloan nevertheless seized the materials, closely analyzed them, made copies of them, and concluded the information contradicted previous statements made by Mr. Perrow; and (3) Detective Sloan forwarded copies of the documents to the prosecutor's office.
¶ 22 Based on these findings, the court entered conclusions:
1.69 Although this Court most assuredly cannot conclude that Det. Sloan consciously undertook to violate defendant's attorney/client privilege, this Court does conclude that the detective's conduct was in violation not only of the constitutional provision assuring the right to counsel but also of RCW 5.60.060(2)(a), which establishes that communication between an attorney and his client shall be privileged and confidential.
1.70 The Court concludes that since the privileged papers, documents and notebooks were not impounded by Det. Sloan but were, rather, reviewed and analyzed as to specific content and therefore communicated to the prosecutor's office, suppression is not an adequate remedy.
CP at 15.
¶ 23 In sum, we conclude the trial court did not abuse its discretion in dismissing the charges against Mr. Perrow. As in Cory, it is impossible to isolate the prejudice presumed from the attorney-client privilege violation. The resolution of this issue is dispositive of this appeal. Thus, we, like the trial court, do not reach Mr. Perrow's CrR 8.3(b) arguments. Nor, do we address Mr. Perrow's cross-appeal.
¶ 24 Affirmed.
I CONCUR: SWEENEY, J.
KORSMO, A.C.J. (dissenting).
¶ 25 This case presents the novel question of whether a negligent violation of the statutory attorney-client privilege should be sanctioned in the same manner as an intentional and deliberate violation of the Sixth Amendment right to counsel, resulting in dismissal of a child molestation prosecution in the absence of actual prejudice to the defense. There is no authority to support this expansion and no hint that the Legislature intended such a remedy. I dissent.
*858 ¶ 26 Mr. Perrow retained counsel to represent him in a civil anti-harassment order case. An attorney-client relationship formed at that time. Bohn v. Cody, 119 Wash.2d 357, 363, 832 P.2d 71 (1992). Mr. Perrow and his counsel reasonably suspected that criminal charges might be filed. To that end, the attorney directed his client to provide him information about the victim (A.P.) and the case in order to impeach her and understand her motivation. Mr. Perrow communicates best in writing. He put down his thoughts in two notebooks and other papers, some of which were found in a trash bin awaiting destruction. Presumably, the information in those documents had also been forwarded to his counsel.
¶ 27 An Okanogan County Sheriff's detective executed a search warrant on Mr. Perrow's home. The detective found and seized the noted items after determining they were of evidentiary value. Sometime during the next three hours, Mr. Perrow told the detective that the items were privileged because his attorney directed their creation. The detective took the items back to his office where he analyzed them along with the other materials seized during the search. Information in the documents was included in the report sent to the prosecutor's office that was used to make the charging decision. In the meantime, some of the information was used by Mr. Perrow in his written response to the civil anti-harassment order case.
¶ 28 Mr. Perrow did not seek return of the documents from law enforcement nor otherwise act to limit their use. Instead, after charges were filed, he moved to suppress the documents and dismiss. The trial court ultimately granted both requests, reasoning that the documents were constitutionally and statutorily privileged and that suppression was an inadequate remedy because information had been communicated to the prosecution.[1] The trial court also found that the detective did not "consciously" undertake to violate the attorney-client privilege.[2] The State then timely appealed. It does not challenge the trial court's factual determinations.
¶ 29 The Sixth Amendment right to counsel attaches when a criminal prosecution is initiated. Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); State v. Medlock, 86 Wash.App. 89, 99, 935 P.2d 693, review denied, 133 Wash.2d 1012, 946 P.2d 402 (1997). The constitutional right had not attached at the time of the search in this case since criminal charges were not filed until 19 days later. Thus, the communications privilege accorded to counsel under the Sixth Amendment was not at issue in this case. Since Mr. Perrow had retained counsel and an attorney-client relationship existed, it was the statutory privilege created by RCW 5.60.060(2), that was applicable here.
¶ 30 That statute provides:
(a) An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.
(b) A parent or guardian of a minor child arrested on a criminal charge may not be examined as to a communication between the child and his or her attorney if the communication was made in the presence of the parent or guardian. This privilege does not extend to communications made prior to the arrest.
¶ 31 Despite the apparent limitation of the privilege in subsection (a) to only attorneys, the statute has been construed to prohibit questioning the client about information provided to or by the attorney. Dietz v. Doe, 131 Wash.2d 835, 842, 935 P.2d 611 (1997); State v. Emmanuel, 42 Wash.2d 799, 815, 259 P.2d 845 (1953). It also extends to written documents that contain a privileged communication. Dietz, 131 Wash.2d at 842, 935 P.2d 611; Pappas v. Holloway, 114 Wash.2d 198, 203, 787 P.2d 30 (1990). The trial court concluded, and the State does not challenge, that the questioned documents were prepared in order for Mr. Perrow to communicate with his counsel. Thus, the trial court properly determined that the seized documents were subject to the attorney-client *859 privilege. The remaining question, and where I part from the majority, involves the remedy.
¶ 32 The lead case is also the sole authority relied upon by the majority, State v. Cory, 62 Wash.2d 371, 382 P.2d 1019 (1963). There a sheriff bugged a jail meeting room and secretly recorded conversations between the criminal defendant and his attorney. Id. at 372, 382 P.2d 1019. The information gleaned from the recordings was presumed to have been shared with the prosecuting attorney. Id. at 377 n. 3, 382 P.2d 1019. Our court found this egregious misconduct violated the constitutional right to counsel. Id. at 377, 382 P.2d 1019. The court also noted that the recording violated the statutory attorney-client privilege. Id.
¶ 33 The court then turned to the issue of remedy. After citing the logic of a California opinion, the court concluded its analysis in this manner:
This concept of how the judiciary should react to violation of constitutional rights, appeals to us.
We think that the court in Fusco v. Moses,[[3]] supra, made the only disposition of the case which would afford an adequate remedy to the defendants and effectively discourage the odious practice of eavesdropping on privileged communication between attorney and client. There, the court ordered that the charges against the defendants should be dismissed and that they should be reinstated in their jobs.
It is our conclusion that the defendant is correct when he says that the shocking and unpardonable conduct of the sheriff's officers, in eavesdropping upon the private consultations between the defendant and his attorney, and thus depriving him of his right to effective counsel, vitiates the whole proceeding. The judgment and sentence must be set aside and the charges dismissed.
Id. at 378, 382 P.2d 1019.
¶ 34 Several inescapable conclusions follow from this passage. First, the court was concerned with the violation of the constitutional right to counsel. There was no consideration of the statutory privilege when the court fashioned its remedy. Second, the court was understandably upset and concerned about the egregious and deliberate violation of the constitutional right. Third, the court's remedy was designed to deter further misbehavior by eliminating any incentive to repeat such conduct in the future.
¶ 35 The next case raising Cory issues also involved deliberate government intrusion into the constitutionally protected attorney-client relationship. In State v. Granacki, 90 Wash. App. 598, 959 P.2d 667 (1998), a detective deliberately read an attorney's notes, including communications with his client, which were left sitting at counsel table during a trial recess. Id. at 600, 959 P.2d 667. The trial court found the detective's actions were deliberate and violated the right to counsel. Id. at 601, 959 P.2d 667. The trial court dismissed the case. Id. Division One of this court affirmed the action on the basis of Cory. Id. at 602-604, 959 P.2d 667. The court reasoned that the remedy was left to the discretion of the trial judge and that lesser remedies would have been permissible. Id. at 604, 959 P.2d 667. Nonetheless, the court thought that the deliberate review of the notes was essentially the same as the intentional eavesdropping in Cory. Id. at 603, 959 P.2d 667. In order to discourage such deliberate and egregious intrusions, dismissal was not an abuse of the trial court's discretion. Id. at 603-604, 959 P.2d 667.
¶ 36 Unlike Cory and Granacki, the detective here did not intrude upon the constitutional right to counsel which did not even exist. Instead, the detective violated Mr. Perrow's statutory privilege. Second, and probably even more critical, is the fact that the violation was not the egregious and deliberate intrusion evidenced by eavesdropping on an attorney consultation room. Here, at worst the intrusion was a negligent one. The officer found the items while executing a valid search warrant. It was only some time after the officer saw the writings that a privilege was claimed by the defendant. Nothing on the face of the writings indicated that they were made for an attorney or had *860 been communicated to one. It was very understandable that the officer did not necessarily lend credence to Mr. Perrow's assertion of privilege. While it may have been prudent for the detective to seek legal advice about the documents, it also is clear that Mr. Perrow did not act to force their return[4] or seek to limit their use. Instead, he waited until after the criminal investigation had been completed before acting.
¶ 37 Under these facts, the remedy of dismissal of criminal charges is not warranted. No case appears to have ordered dismissal of any actioncivil or criminalfor violation of the statutory attorney-client privilege. The Legislature did not specify any remedy and the case law to date has not declared any such remedy. The deterrence rationale underlying Sixth Amendment cases is not at play in this case. In both Cory and Granacki, the courts addressed deliberate intrusions into the protected relationship. Here, the trial court expressly found that the detective did not purposefully intrude upon the attorney-client relationship.[5] This circumstance calls for a more nuanced approach than the absolute deterrence remedy of dismissal applied to intentional violations of the constitutional right to counsel.
¶ 38 This court dealt with Cory in a somewhat different factual circumstance in State v. Garza, 99 Wash.App. 291, 994 P.2d 868, review denied, 141 Wash.2d 1014, 10 P.3d 1072 (2000). There, corrections officers had searched the cells of inmates involved in an escape attempt and looked through all of their possessions, including legal papers. Some items were seized, including legal materials. Id. at 293-294, 994 P.2d 868. The paperwork was returned when counsel requested it. Id. at 294-295, 994 P.2d 868. The inmates filed individual motions to dismiss their pending charges, using CrR 8.3(b) to argue governmental misconduct. The trial court denied the motions, finding good faith on behalf of the corrections officers and lack of prejudice to the inmates. This court granted discretionary review. Id. at 295, 994 P.2d 868.
¶ 39 This court noted that rulings under CrR 8.3(b) are reviewed for abuse of discretion and that the extraordinary remedy of dismissal is only appropriate when there has been such prejudice that no other action would ensure a fair trial. Id. The court also noted that the United States Supreme Court had rejected a per se dismissal rule for violation of the Sixth Amendment attorney-client relationship.[6]Id. at 298, 994 P.2d 868. Finding Cory and Granacki most on point, the court concluded that dismissal would be an appropriate remedy if the search of the legal papers was not justified.[7]Id. at 300-301, 994 P.2d 868. The matter was remanded for factual findings. Id. at 301, 994 P.2d 868. Even if the search was justified, the inmates could still receive relief if they were able to establish prejudice from the search. Id. The trial court would have discretion to fashion an appropriate remedy, but dismissal would only be permissible when no lesser sanction would be effective. Id. at 301-302, 994 P.2d 868.
¶ 40 Garza is interesting in several respects that inform the decision here. First, the court agreed that it was actually dealing with a constitutional violation if the intrusion was not justified. Second, the court agreed with Granacki that sanctions less than dismissal could be appropriate. Third, sanctions would be possible even if the search was justified, if prejudice was established.
¶ 41 These lessons are useful here. First, although I do not believe the constitutional *861 right to counsel is implicated here because this was a pre-charging situation, the Garza court's suggestion that a justified search would not violate the constitution should also lead to the conclusion that the detective's search here likewise did not. The reason is that the detective seized the unmarked and clearly relevant items pursuant to a valid search warrant. Further, the trial court found the detective was not acting with the purpose of intruding on the attorney-client privilege. These two factors strongly suggest that no constitutional violation occurred under the Garza reasoning.
¶ 42 Next, the Garza court's recognition that a lesser sanction than dismissal could be proper for a justified (or, in my view, nondeliberate) violation directly affects the sanction in this case.[8] Appellate counsel for Mr. Perrow has identified an alternative sanction that would have cured the damage done hereremoval of the sheriff's office and the prosecuting attorney's office from the case. A new prosecutor, relying solely on evidence delivered by another investigating agency from proper sources, could decide whether to proceed with charges or not. This sanction seems particularly appropriate here since there is no obvious taint to the prosecution's case. A.P. had disclosed the alleged abuse to law enforcement in Louisiana, and then in Washington, prior to the search conducted in this case. The evidence needed to prosecute the case existed independent of, and prior to, the discovery of the defendant's written remarks. Moreover, the thrust of the written items was simply impeachment of A.P. and disagreement with her about the events in question. Much of this the defendant soon put into the public record by responding in the anti-harassment order case. There does not appear, from the description we have received, to be anything in the written comments that would have been useful to the prosecution. The material also would have ultimately been disclosed to the prosecutor if used by the defense at trial, and it also was used in the civil proceedings. It is difficult to discern any harm at all to the defense, let alone such significant injury that a dismissal was required.[9]
¶ 43 The consequence of extending Cory's sanction for the deliberate violation of a constitutional right to the non-deliberate violation of the statutory privilege is potentially staggering and is certainly not limited to criminal cases. The shrewd defense attorney, in either a civil or a criminal case, would be wise to "inadvertently" send a privileged document to the plaintiff's counsel and then seek dismissal of the pending civil or criminal case. The resulting windfall, whether escaping liability for a potential multi-million dollar verdict or avoiding a term in prison, is simply not justified by the imputed injury.
¶ 44 The trial court erred in applying Cory to the non-deliberate violation of a statutory privilege. The harsh sanction of dismissal, created to deter intentional intrusion into the constitutional attorney-client relationship, should not be the remedy in this fact pattern, particularly in the absence of actual prejudice. Since the majority concludes otherwise, I dissent.
NOTES
[1] "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." RCW 5.60.060(2)(a).
[1] The trial court did not address Mr. Perrow's CrR 8.3(b) argument.
[2] Clerk's Papers (CP) at 29.
[3] Fusco v. Moses, 304 N.Y. 424, 107 N.E.2d 581 (1952).
[4] See CrR 2.3(e), which authorizes courts to return improperly seized items prior to charges being filed.
[5] Division One has subsequently read both Cory and Granacki as cases where dismissal was employed to discourage intentional government intrusion into the constitutional attorney-client relationship. State v. Webbe, 122 Wash.App. 683, 697 n. 36, 94 P.3d 994 (2004); State v. Hunter, 100 Wash.App. 198, 205, 997 P.2d 393, review denied, 141 Wash.2d 1027, 11 P.3d 826 (2000).
[6] Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (government informant's presence at attorney-client meetings did not require dismissal of charges where informant had not reported information to the prosecutor and suppression was adequate remedy).
[7] The court concluded that an unjustified search would "establish[] a constitutional violation." Garza, 99 Wash.App. at 301, 994 P.2d 868.
[8] The Granacki court likewise recognized that lesser sanctions than dismissal were permitted for Sixth Amendment violations. 90 Wash.App. at 604, 959 P.2d 667. The United States Supreme Court concurs. Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837.
[9] It also is very telling that the defense did not seek immediate return of the privileged materials as permitted by CrR 2.3(e) and as the Garza defendants did. This inaction suggests that Mr. Perrow did not consider the comments very material.