
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                            |     |                    |
| -------------------------- | --- | ------------------ |
| STATE OF WASHINGTON,       | )   | No. 71298-5-I      |
|                            | )   |                    |
| Respondent,                | )   | DIVISION ONE       |
|                            | )   |                    |
| v.                         | )   |                    |
|                            | )   |                    |
| DARRELL LEWIS MORGAN,      | )   | UNPUBLISHED        |
|                            | )   |                    |
| Appellant.                 | )   | FILED: May 4, 2015 |
|                            | )   |                    |

Cox, J. — Darrell Morgan appeals his conviction of second degree possession of depictions of a minor engaged in sexually explicit conduct. The trial court did not abuse its discretion by refusing to dismiss the case and imposing other remedies after finding a detective had "[looked] over at a notebook in front of [Morgan]" during trial. There is sufficient evidence to support the conviction. The trial court did not abuse its discretion in admitting evidence of nude adults in Morgan's possession. And the trial court did not prevent Morgan from presenting a defense. We affirm.

While investigating an internal complaint of personal use of a company computer, Charles Roberts, a forensic examiner for the Boeing Company, discovered a large number of pornographic images, as well as photos of a naked child taking a shower, on Morgan's work station computer. Roberts determined that Morgan had been using his work computer to view and manipulate these images on a removable portable device connected through a USB port. Roberts

made a copy of the entire contents of the portable device, which proved to be Morgan's smartphone.

Roberts also discovered the following instant messaging exchange between Morgan and his wife Melissa Morgan, also a Boeing employee, occurring on April 26, 2012, from 8:16 to 8:26 a.m.:

> [Morgan]: I truly wish you shared some of the dark desires Cyndy and I do.
> [Melissa]: I don't interact with her and it feels like she sometimes thinks she is above us even to me . . . . I do for some.
> [Morgan]: Yes some . . . . The corruption of an innocent doesn't hold appeal to you?
> [Melissa]: No, it doesn't . . . . Sorry.
> [Morgan]: Kinda felt like you were trying to throw me under the bus about the pics on my phone.
> [Melissa]: May I look at your pics today? I truly couldn't see what they were!
> [Morgan]: Okay, but you're not going to appreciate . . . . Just saying.
> [Melissa]: Okay.
> [Morgan]: Shower pics.
> [Melissa]: Of?
> [Morgan]: Innocent.
> [Melissa]: Okay . . . . Off Internet?
> [Morgan]: Yes.
> [Melissa]: Sir, you need to be careful of that!
> [Morgan]: I know . . . . If I had not be (sic) referred to there by someone I trust . . . . And it is a noncommercial site . . . . Private group.
> [Melissa]: Ah . . . . We can discuss later.
> [Morgan]: But very, very careful.
> [Melissa]: Might be better to put images to CD?
> [Morgan]: Agreed.
> [Melissa]: And clean 'puter.
> [Morgan]: Not on puter . . . . Straight to phone.
> [Melissa]: Still linked to email.
> [Morgan]: Yes.[1]

---

[1] Verbatim Report of Proceedings (October 16, 2013) at 390-92.

At noon, the following exchange occurred: "[Melissa]: As I said, not personally good with younger than 12, but have no problems with what you like . . . . [Morgan]: Good."

When Everett Police Detectives Karen Kowalchyk and Aaron De Folo asked him about the pictures of the girl in the shower, Morgan admitted that "somebody" "sent it to [him] via texts and pictures," but he refused to "give that person's . . . name because [he didn't] want them getting in trouble." Morgan identified pictures of Cyndy and her granddaughter but repeatedly stated that the child in the shower pictures was a different child and that he got the shower pictures from a different person. Morgan told the detectives that he lived with and was in a relationship with both Cyndy and his wife Melissa, as if he had "two wives." When the detectives asked about his instant messaging exchange with Melissa, Morgan claimed that the conversation was not about the pictures of the child in the shower, but about pictures of an "underdeveloped" adult male in the shower or about pictures of Morgan taking a shower with another woman.

The State charged Morgan with second degree possession of depictions of a minor engaged in sexually explicit conduct. At trial, the State presented Roberts's testimony regarding the results of his investigation, a recording of the detectives' interview with Morgan, and various exhibits including pictures and messages from Morgan's phone. Cynthia Ocheltree testified that she lives with and has a "sexually" "open relationship" or "swingers lifestyle" with Morgan and his wife Melissa. Ocheltree testified that she had taken many pictures of her nine-year-old granddaughter, A.S., including pictures while A.S. was taking a

3

shower, because she was "making a scrapbook" for "Mother's Day for her mom." Ocheltree claimed that she sent some pictures of A.S. to Morgan so she could "free up space" on her phone to "take more pictures." A.S. and her mother testified that they did not know that Ocheltree had taken pictures of A.S. in the shower or sent them to Morgan until after the investigation of this case began.

On the third day of trial, outside the presence of the jury, Morgan moved to dismiss the case, claiming that Detective Kowalchyk violated his rights to counsel, due process, and a fair trial by reading the notes he wrote to his attorney during trial. After questioning Detective Kowalchyk and defense counsel under oath, and considering "all of the evidence," the trial court could not find that the detective had "intentionally" attempted to read or had "actually" read anything from Morgan's notes. However, because it was "extremely concerning . . . that a detective is looking over at a notebook in front of a defendant," the court ruled that "an appropriate remedy would be to exclude Detective Kowalchyk from testifying in this case."

The prosecutor advised the court that Detective De Folo, who he intended to call as a witness rather than Detective Kowalchyk, had been sick, but agreed to determine his availability during a recess. After a brief recess, Detective Kowalchyk stated on the record that she had spoken to Detective De Folo on the phone during the recess, and that he "sounded really hoarse" but "said that he would make every effort to be here tomorrow morning." Following a lengthy discussion regarding potential exhibits and the lunch break, the prosecutor asked

for clarification as to whether the court would allow Detective Kowalchyk to continue to participate in the case. The trial court allowed Detective Kowalchyk to sit at counsel table and assist the prosecutor, but directed her "not to communicate about the substance of this case with . . . any of the witnesses." Acknowledging that Detective Kowalchyk spoke to Detective De Folo on the phone for scheduling purposes, the court stated "that's not of concern to me." Although defense counsel raised certain questions on the record, she stated "I was not the one who raised this motion," and did not object to the court's resolution of the prosecutor's request for clarification.

The jury convicted Morgan as charged. Morgan appeals.

## MOTION TO DISMISS

Morgan claims that a detective's conduct during trial warranted dismissal of the case. We disagree.

We review a trial court's denial of a motion to dismiss for abuse of discretion.[2] A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[3]

The right to counsel is protected by the Fifth and Sixth Amendments of the United States Constitution and by article I, section 22 of the state constitution.[4] Intrusion into private attorney-client communications violates a defendant's right to effective representation and due process.[5]

---

[2] State v. Hanna, 123 Wn.2d 704, 715, 871 P.2d 135 (1994); State v. Granacki, 90 Wn. App. 598, 602 n.3, 959 P.2d 667 (1998).
[3] State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).
[4] State v. Cory, 62 Wn.2d 371, 374-75, 382 P.2d 1019 (1963).
[5] Id.

The conduct that was the basis of the objection was that a detective allegedly read written communications between Morgan and his counsel during trial. The trial court considered the matter and determined that there was no intentional viewing of privileged communication between counsel and client. But, in an excess of caution, ruled the detective would not be allowed to testify at trial.

Morgan relies on State v. Cory[6] and State v. Granacki,[7] both of which involved deliberate and egregious intrusion by the State into confidential communications between an accused and his attorney.[8] In Cory, officers recorded and eavesdropped on the defendant's conversations with his attorney by installing a hidden microphone in a private conference room in the county jail provided for prisoners to consult their attorneys.[9] The Washington Supreme Court described the officers' conduct as "shocking and unpardonable."[10]

In Granacki, the State's lead detective in the case admitted to reading defense counsel's notes during a trial recess, but claimed that he only read his name on one page and did not read any other notes.[11] After a hearing, the trial court found that the detective "intentionally read defense counsel's notes and that his testimony about reading them was not credible."[12] Although "less extensive

---

[6] 62 Wn.2d 371, 372, 378, 382 P.2d 1019 (1963).
[7] 90 Wn. App. 598, 601, 603-04, 959 P.2d 667 (1998).
[8] See also, State v. Fuentes, 179 Wn.2d 808, 816-17, 318 P.3d 257 (2014) (trial judge found "egregious" police misconduct where detective investigating possible witness tampering listened to six conversations on jail phone between defendant and his attorney).
[9] 62 Wn.2d at 372.
[10] Id. at 378.
[11] 90 Wn. App. at 600.
[12] Id. at 601.

than the eavesdropping" in Cory, this court agreed that the detective's behavior was "egregious."[13]

But here, the trial court was not persuaded that Detective Kowalchyk deliberately attempted to intercept privileged communications between defense attorney and client. Thus, there was no egregious conduct warranting the sanction of dismissal. Instead, because the detective "should know that she can't look at a notebook with defendant's writing on it," the trial court excluded her testimony "to temper any potential . . . reading of those notes." The trial court was in the best position to determine the facts and found no violation.

Moreover, Morgan fails to establish any abuse of discretion in the trial court's choice of remedy to avoid any potential for prejudice. As this court noted in Granacki, governmental misconduct generally does not require dismissal absent actual prejudice to the defendant.[14] Even then, the trial court may properly choose to impose a lesser sanction, because this is a classic example of trial court discretion.[15] In that case, had the trial "court chosen to ban [the detective] from the courtroom, exclude his testimony and prohibit him from discussing the case with anyone," this court would not have found an abuse of discretion.[16] Morgan does not claim Detective Kowalchyk's continued participation in the trial or her communication with Detective De Folo regarding scheduling resulted in actual prejudice. And he does not identify any authority

---

[13] Id. at 603-04.
[14] Id. at 604.
[15] Id.
[16] Id.; see also, State v. Garza, 99 Wn. App. 291, 301-02, 994 P.2d 868 (2000) (if, upon remand, defendants establish jail officers' actions violated their right to counsel, superior court in its discretion should fashion appropriate remedy, "recognizing that dismissal is an extraordinary remedy, appropriate only when other, less severe sanctions will be ineffective").

requiring a presumption of prejudice and dismissal in this case based on the possibility that Detective Kowalchyk inadvertently read something from the notebook.[17]

The trial court properly denied Morgan's motion to dismiss the case.

## SUFFICIENCY OF THE EVIDENCE

Morgan argues that there was insufficient evidence to support his conviction because no rational juror could have found beyond a reasonable doubt that Ocheltree took pictures of A.S. in the shower for the purpose of sexual stimulation of the viewer. We disagree.

The due process clause of the Fourteenth Amendment of the United States Constitution requires that the State prove every element of a crime beyond a reasonable doubt.[18] To determine whether the evidence is sufficient to sustain a conviction, this court must determine "whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt."[19] A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from the evidence.[20] On issues concerning conflicting testimony, credibility of witnesses, and persuasiveness of the evidence, this court defers to the jury.[21]

---

[17] Cf. State v. Webbe, 122 Wn. App. 683, 697, 94 P.3d 994 (2004) (refusing to presume prejudice where prosecutors saw privileged notes from defense counsel's meeting with defendant, which included a discussion of the pending charges, but without "purposeful, wrongful intrusion upon attorney-client privilege").

[18] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[19] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

[20] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[21] State v. Walton, 64 Wn. App. 410, 415–16, 824 P.2d 533 (1992).

Circumstantial evidence and direct evidence are considered equally reliable when weighing the sufficiency of the evidence.[22]

Where possession and intent are elements of a crime, we do not permit inferences based on mere possession.[23] "When intent is an element of the crime, 'intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'"[24] Intent may be proved through circumstantial evidence but may not be inferred from "patently equivocal" evidence.[25]

RCW 9.68A.070(2)(a) provides, "A person commits the crime of possession of depictions of a minor engaged in sexually explicit conduct in the second degree when he or she knowingly possesses any visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g)." Relevant here, RCW 9.68A.011(4)(f) defines "Sexually explicit conduct" as "actual or simulated":

> Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it.

"RCW 9.68A.011(4)(f)'s plain meaning is that the person who creates the depiction . . . must have the 'purpose of sexual stimulation of the viewer.' "[26]

"[T]he creator of the "depiction" is the person who creates the image, such as a

---

[22] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

[23] State v. Vasquez, 178 Wn.2d 1, 8, 309 P.3d 318 (2013).

[24] Id. (quoting State v. Woods, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).

[25] Id. (quotations omitted).

[26] State v. Powell, 181 Wn. App. 716, 728, 326 P.3d 859, review denied, 181 Wn.2d 1011 (2014).

photographer."[27]  The final sentence in RCW 9.68A.011(4)(f) "shows that the legislature intended to extend criminal liability to those who possess depictions made by secretly recording minors without their knowledge."[28]

Here, there is sufficient evidence to support the conviction.  It is undisputed that Ocheltree created and sent to Morgan the pictures of her nude granddaughter taking a shower.  It is also undisputed that this minor did not know that she was the object of Ocheltree's conduct.  Thus, the question is whether the person who created the pictures, Ocheltree, had the purpose of sexual stimulation of the viewer, Morgan.

A jury could find beyond a reasonable doubt that this element of the crime was committed.  She testified that she had a sexual relationship with Morgan and that she had sent Morgan erotic pictures of herself.

Roberts testified that Boeing's computer records indicated that Morgan stored the pictures of A.S. in data file folders with many other pornographic images.  The record also indicates Morgan was viewing the pictures of A.S. on his computer at approximately the same time he mentioned his and Ocheltree's "dark desires" and "the corruption of an innocent" to his wife in instant messages. When confronted by police detectives, Morgan did not explain how or why he received the pictures and gave inconsistent explanations for his instant messaging conversations.  Viewed in the light most favorably to the State, these facts and circumstances support a logical inference that Morgan knowingly

---

[27] Id.
[28] Id.

possessed the pictures of A.S. that Ocheltree had created for the purpose of his sexual stimulation.

Morgan argues that the only evidence presented as to Ocheltree's purpose for taking and sending the pictures was her testimony denying a sexual motivation and offering an innocent explanation. In view of the evidence that we previously quoted in this opinion, that argument is untenable.

He also claims that his comments during the instant messaging session with Melissa and the interview with the detectives indicate he was referring to pictures of other adults taking showers. And he claims that the delay between the first and second instant messaging exchange between Morgan and Melissa undermines any inference that Melissa was referring to Morgan's and Ocheltree's shared sexual interest in pictures of A.S. in the shower.

The jury was entitled to disbelieve all of this and find as it did. These are largely credibility determinations that we do not review on appeal.

## EVIDENTIARY RULINGS

Morgan challenges the admission into evidence of eight exhibits containing sexually explicit images of adults or images of clothed children found on his phone.[29] He argues generally that the exhibits were irrelevant because they did not have any tendency to demonstrate Ocheltree's purpose in taking the pictures of A.S. He also argues that the exhibits were unduly prejudicial because any probative value was outweighed by the risk that the jury would base its verdict on Morgan's sexual interests and possession of unrelated sexually explicit

---

[29] In his reply brief, Morgan concedes that two additional exhibits listed in his opening brief were properly admitted without objection.

11

materials. Because there was no abuse of discretion in these evidentiary rulings, we disagree.

We review evidentiary rulings for abuse of discretion.[30] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[31] Evidence that is not relevant is not admissible.[32] Under ER 403, the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[33]

The State's theory of the case was that Morgan and Ocheltree shared a sexual interest in the pictures of A.S. in the shower. Each of the challenged exhibits tended to show either what Morgan was viewing at the time of the instant message conversation, how he stored the pictures of A.S. in certain folders on his phone along with other pornographic images, or what other shower pictures were available on his phone and described during his interview with the detectives. Thus, these exhibits were relevant to a determination of whether Morgan knowingly possessed the pictures Ocheltree created for the purpose of his sexual stimulation. And the record reveals that the trial court explicitly considered the danger of unfair prejudice when admitting the exhibits, as ER 403 requires.

---

[30] State v. Matthews, 75 Wn. App. 278, 283, 877 P.2d 252 (1994).
[31] ER 401.
[32] ER 402.
[33] ER 403.

12

For these reasons, Morgan fails to demonstrate any abuse of discretion by the trial court in its evidentiary rulings.

## RIGHT TO PRESENT DEFENSE

Morgan argues that he was denied his right to counsel and to present his defense when the trial court sustained the prosecutor's objection during his closing argument. We disagree.

The right to counsel and to a jury trial includes a right to have the defense "theory of the case argued vigorously to the jury."[34] But the trial court has broad discretion to control and restrict closing arguments.[35]

During closing, defense counsel argued that the case was about a misunderstanding of the context in which the pictures of A.S. were discovered on Morgan's phone. Counsel reviewed Ocheltree's testimony about her innocent purpose for the pictures and argued repeatedly that she was credible when she described her scrapbook project. Then counsel argued that the computer records did not establish that Morgan was referring to the pictures of A.S. in his instant messages to Melissa. Finally, in response to the State's discussion of the elements of the crime, counsel continued:

> ***[B]ut this is about whether or not [A.S.] was engaged in sexually explicit conduct.*** This is about whether or not the nude picture was for the purpose of sexual stimulation of the viewer, and that wasn't the purpose at all. The purpose was for a scrapbook.
> [Prosecutor]: Objection, Your Honor. Misstatement of the law.
> The Court: Sustained.[36]

---

[34] State v. Woolfolk, 95 Wn. App. 541, 549, 977 P.2d 1 (1999) (quoting United States v. DeLoach, 504 F.2d 185, 189 (D.C. Cir. 1974)).

[35] Id. at 548.

[36] Verbatim Report of Proceedings (October 17, 2013) at 562 (emphasis added).

Defense counsel concluded by arguing the case was "a misunderstanding based on the other images that were on Mr. Morgan's phone," and that he did not commit a crime because the pictures "certainly do not contain sexually explicit conduct."[37]

In rebuttal, the prosecutor stated, "The reason that objection was sustained is because the definition of sexually explicit conduct does not require you to find what [A.S.] was thinking about these pictures."[38]

Based on this record, Morgan fails to demonstrate any abuse of discretion. Although the prosecutor stated his objection immediately after defense counsel again referred to the scrapbook, it is apparent from the context that the basis of his objection was the suggestion that in order to establish Morgan's guilt the State had to prove that A.S. was engaged in sexually explicit conduct. Because RCW 9.68A.011(4)(f) states that "it is not necessary that the minor know that he or she is participating in the described conduct," and because the undisputed evidence at trial was that A.S. was unaware that Ocheltree was taking pictures while she showered, the trial court properly sustained the objection.

Morgan fails to establish a violation of his right to counsel and to present his defense.

**STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW**

In a statement of additional grounds, Morgan states that an investigative report by Child Protective Services "was never admitted in original trial." He also states that the trial court should have ordered a sexual deviancy evaluation and

---

[37] Id. at 562-63
[38] Id. at 563.

14

polygraph prior to trial rather than after his conviction. Because these statements do not sufficiently inform the court of the nature and occurrence of the alleged error, we cannot review them.[39]

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

---
39 RAP 10.10(c).