[No. 972-1.    Division One—Panel 2.    October 30, 1972.]

METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF
SEATTLE, *Respondent*, v. GREENACRES MEMORIAL
ASSOCIATION, *Appellant*.

*Bushnell & Burnfield* and *Andrew G. Burnfield*, for appellant.

*Skeel, McKelvy, Henke, Evenson & Betts, W. E. Evenson, Barker, Day & Taylor*, and *Edward W. Taylor*, for respondent.

*Slade Gorton, Attorney General*, and *Donald Foss, Jr., Assistant*, amici curiae.

FARRIS, A.C.J.—On August 17, 1970, Greenacres Memorial Association on the theory that there was an irregularity in the proceedings moved to vacate a judgment of foreclosure that had been entered on April 24, 1970. The trial court, finding no irregularity, denied the motion. We affirm that decision.

Following a hearing on April 1, 1970, on the action by Metropolitan Federal Savings and Loan Association of Seattle to foreclose a mortgage against Greenacres Memorial Association, proposed findings of fact and judgment were

prepared and submitted to Greenacres for review. On April 24, 1970, with the attorney for Greenacres present and concurring in the entry of that judgment, the following exchange occurred:

MR. BRUNNER: I am not represented by counsel, but I think there are some things here that the Court is unaware of and the stipulations that have been made come as a very rude shock to the membership. By this I mean the six or so hundred members they were just referring to who were not represented and whose votes were not represented by this thing.

It is the contention of us that this whole note and mortgage is a complete nullity as far as Greenacres Memorial Association is concerned in as much as no authorized representative of the association ever signed either note or mortgage. The association never borrowed any money; never got any money, and that what has been purported to happen actually did not happen. That the association's alleged trustees were not in fact real trustees, that they did not have voting rights and that prior to it, this whole negotiation and under these circumstances, with the complete disenfranchisement of the six hundred members not represented by the three shares.

There is a grave injustice being done here if this is allowed as stipulated, and this mortgage assumed to be in fact a real mortgage. If the association didn't sign it, it doesn't exist. It seems to me as simple as that.

Now, I assume we are going to have to have time to prove the allegation that these trustees in fact were not trustees. They did not have voting rights, but this is one of the slickest operations that I have ever seen, Your Honor. The purported trustees of the association on one given day, namely the 26th of January, transformed this non-profit association, cemetery association into a profit making personal venture, and this was not properly legally done. It is against the law of the State of Washington, I am sure. It is against public policy, and it didn't happen. And I just don't believe this stipulation should be allowed to stand as made.

That is all I have to say.

THE COURT: Did you identify yourself?

MR. BRUNNER: I didn't, Mr. Livesey, Stan Brunner from Ferndale. I am one of the trustees of the associa-

tion, newly elected, and we haven't really had time to get together to formalize any kind of a defense. We were first aware of this stipulation in mid-week, and, hence, this highly irregular approach of mine.

THE COURT: All right. You are entitled to have said what you did say Mr. Brunner. Your exceptions will be noted.

Does either counsel have any comment on the statement just made by this gentleman?

MR. LIVESEY: The only comment I can make at this time, I was aware Mr. Brunner was going to be here as of yesterday. I did not know that he had the attitude that he had today. I had not been informed of this. I knew they met last weekday evening, the board of trustees, to consider the stipulation. I also want to have the record clear that prior to our coming to court in April 1st, I, at the request of Messrs. Moles, Jones and King did contact a Mr. Brunner and did contact Mr. Kunzman who works at Georgia Pacific Corporation, one of the trustees, to explain the recommendation that I had made to the trustees who were most closely associated with me in connection with this matter. I thought I had attached the approval of Mr. Brunner to what we were going to do with respect to determining the validity of this mortgage so that we could preserve, at least preserve Greenacres Memorial Association for the benefit of the public which was the main concern so it would not be subject to invasion of foreclosure. So I can only make that comment to the Court. I was not aware of Mr. Brunner's position, I guess stand, until right now.

MR. BRUNNER: I concur you didn't know. I wasn't real sure myself I would do such a thing, but I thought it needed to be done.

THE COURT: As I said before your exception will be noted and I will, however, sign the Findings and Judgment as presented and as agreed to by all counsel representing parties represented.

Greenacres argues that this exchange put the court on notice that the trustees objected to the entry of the judgment and that the court in the exercise of its inherent powers should have directed further inquiry before entering the findings and judgment.

As early as 1909, the court defined irregularity:

"An irregularity is defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner." Vol. 4 Words & Phrases; Title, Irregularity, and cases cited.

*Merritt v. Graves*, 52 Wash. 57, 59, 100 P. 164 (1909).

The record reflects that the trial court fully considered the issues raised in the affidavits filed in support of the motion to vacate and concluded:

In making this ruling, the Court finds that the 'meritorious defense' set out in defendant's various affidavits in support of its motion is the same defense originally pleaded in defendant's Answer and Counterclaim filed July 25, 1969, and the defendant's own Answers to Interrogatories filed March 11, 1970, added little to the original Answer and Counterclaim. At least three of the seven trustees of defendant took active parts in meetings and/or negotiating sessions with attorneys for plaintiff and defendant, at which meetings all, or substantially all, of the defenses now raised by defendant were fully discussed.

The Court finds that defendant was represented by counsel at all times up to and including April 1, 1970, at which time the case came on for trial, agreements and stipulations were made, exhibits admitted and judgment entered in accordance therewith. Defendant continued to be represented by counsel up to and including April 24, 1970 at which time one trustee for the first time indicated his displeasure with the entry of the proposed written judgment.

The Court finds that the circumstances surrounding the signing of the judgment on April 24, 1970, did not constitute an 'irregularity' contemplated by the statute or the cases cited and defendant's motion must be denied.

We agree.

The state appears as amicus curiae to question: To what extent did the superior court have the power to reserve the right to foreclose on cemetery property, here designated as parcel A, in light of RCW 68.20.120 and RCW 68.24.220

which expressly exempt from any execution land owned by a cemetery corporation which has been sold to private owners for purposes of interment.

█ Whether this legal issue can be considered on a motion to vacate is controlled by CR 60 which provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (5) The judgment is void;

This rule merely recognizes the inherent power of the court. A void judgment can be attacked at anytime but otherwise

> "The power to vacate judgments, on motion, is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings. It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen. That a judgment is erroneous as a matter of law is ground for an appeal, writ of error, or certiorari according to the case, but it is no ground for setting aside the judgment on motion." 1 Black on Judgments (2d ed.) 506, § 329.

*Kern v. Kern,* 28 Wn.2d 617, 619, 183 P.2d 811 (1947). *See also Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.,* 68 Wn.2d 756, 415 P.2d 501 (1966).

We can therefore grant no relief upon the ground urged by the state unless the judgment is void as opposed to voidable. A void judgment is defined in *Dike v. Dike,* 75 Wn.2d 1, 7, 448 P.2d 490 (1968):

> A judgment, decree or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void. [*Robertson v. Commonwealth,* 181 Va. 520, 536, 25 S.E.2d 352, 146 A.L.R. 966 (1943).]

We are limited here to an inquiry into whether the trial court had the power to make the ruling, assuming but not deciding that the state is correct in its allegation that the judgment is contrary to statutory law. This question was also answered in *Dike v. Dike, supra* at 8.

[T]here is a vast difference between a judgment which is void and one which is merely erroneous. . . . it is said: "* * * a void judgment should be clearly distinguished from one which is merely erroneous or voidable. There are many rights belonging to litigants—rights which a court may not properly deny, and yet if denied, they do not render the judgment void. Indeed, it is a general principle that where a court has jurisdiction over the person and the subject matter, no error in the exercise of such jurisdiction can make the judgment void, and that a judgment rendered by a court of competent jurisdiction is not void merely because there are irregularities or errors of law in connection therewith. This is true even if there is a fundamental error of law appearing upon the face of the record. Such a judgment is, under proper circumstances, voidable, but until avoided is regarded as valid."

"Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law." Freeman on Judgments, 5th Ed., section 357, p. 744. [*Robertson v. Commonwealth,* 181 Va. 520, 25 S.E.2d 352, 146 A.L.R. 966 (1943).]

Affirmed.

JAMES and SWANSON, JJ., concur.

Petition for rehearing denied December 5, 1972.