FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 48

STATE OF WASHINGTON

No. 45275-8-II
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| ANTHONY J. BUDZIUS and MONICA BUDZIUS, husband and wife, | |
| Appellants, | |
| v. | |
| LESLIE D. MILLER fka BUDZIUS, | UNPUBLISHED OPINION |
| Respondent | |

MELNICK, J. — Anthony Budzius[1] appeals from the trial court's denial of his complaint to vacate an amendment to his dissolution decree with Leslie Miller. Budzius argues that the amended decree was invalid because it was not a qualified domestic relations order (QDRO), and Budzius's former attorney lacked authority to agree to the amended decree. We disagree and affirm the trial court.

FACTS

Budzius was married to Miller for approximately 10 years. During that time, Budzius worked as a police officer in Fife. He had a Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) Plan 2[2] retirement plan with the state.

Budzius and Miller divorced in November of 1992. The decree of dissolution, as originally drafted, provided that the value of the community interest in Budzius's retirement account was $27,210, and "a Qualified Domestic Relations Order should issue, such that [Miller] should be awarded fifty percent (50%) of said $27,210.00." Ex. 3, at 4. Budzius did not pay Miller. He

---

[1] Although Budzius's current wife Monica is also named as an appellant, she was not involved in the relevant events and will not be discussed further.

[2] RCW 41.26.005-.062, RCW 41.26.410-.921.

understood that *at the time of his retirement*, he would be obligated to pay half of the *then-existing* $27,210 in his retirement account, or $13,605. Throughout the dissolution proceedings, Joseph Lombino, attorney at law, represented Budzius.

In July 1993, Lombino agreed with Miller's attorney to amend the dissolution decree. The amended decree awarded Miller a percentage of Budzius's retirement payments in the event that Budzius received periodic payments. On the other hand, if Budzius withdrew his retirement contributions or became eligible for a lump sum death benefit, Miller would receive the $13,605 plus interest. The attorneys signed the order ex parte, allegedly without Budzius's knowledge or consent. Miller's attorney did not serve the amended decree on Budzius. The record does not indicate whether Lombino ever provided a copy to Budzius. Miller's attorney deposed Lombino in an attempt to ascertain what happened, but Lombino claimed the attorney-client privilege and did not provide evidence.

Budzius left his job for medical reasons in 2008. He began receiving retirement benefits from the state in December of that year. He did not pay Miller anything or inform her of his retirement. Because of an error, the state Department of Retirement Systems (DRS) did not immediately process the amended decree.

In 2011, DRS notified Budzius that he owed Miller approximately $600 per month from his retirement benefits.[3] DRS paid Miller $20,682.24 and demanded reimbursement of the same amount from Budzius. Budzius paid DRS in full. Until DRS notified him, Budzius did not know of any obligation to make periodic payments to Miller. Since 2011, Budzius has continued to pay Miller $653.42 per month.

---

[3] This amount was calculated by dividing Budzius's 115 months of marriage by his 338 total months of state employment and halving that figure, resulting in a community entitlement of 17.012 percent of benefits.

## PROCEDURAL HISTORY

Budzius filed a complaint against Miller to vacate the amended decree and obtain reimbursement of the money paid to her from his retirement account. A bench trial ensued. Budzius's theory of the case was that the amended decree was not a QDRO because it fundamentally altered the property distribution under the original decree of dissolution. Budzius further argued that Lombino had not been authorized to amend the decree on Budzius's behalf. Lombino did not appear or testify at the trial.

Miller argued at trial that the original decree plainly contemplated a supplemental order, and the amended decree served as that order. The court agreed and further held that Budzius had failed to carry his burden of proving Lombino had overreached his authority. The court entered judgment in Miller's favor and declined to adjust the amended decree. Budzius appeals.

## ANALYSIS

Although the parties raise several issues, the dispositive question in this case is whether the amended decree was enforceable. That question turns on two issues: first, whether the amended decree was properly qualified as a QDRO, and second, whether the amended decree was entered with Budzius's authority. We hold that the amended decree did qualify as a QDRO and that Lombino had authority to agree to the amended decree on Budzius's behalf.

I.    STANDARD OF REVIEW

We review a trial court's decision on a motion to vacate a judgment for abuse of discretion. *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 136 (1997).

3

II.    QDRO

Budzius argues that the amended decree could not be considered to be a QDRO, and was thus ineffective as a modification of the property division in the original decree of dissolution. We disagree.

QDROs exist under federal law and are a means to implement a court order entered in a domestic relations case. Budzius argues that a QDRO may never "alter or amend the substantive provisions of the decree." Br. of Appellant at 13 (citing *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App. 2006)). Budzius fails to provide any Washington law for his proposition. In fact, Budzius's theory contravenes the plain language of the QDRO statute, 29 U.S.C. § 1056(d)(3)(B)(i). That statute defines a QDRO as "a domestic relations order (I) which *creates* or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i) (emphasis added).

A QDRO is subject to the following statutory requirements:

1.    It creates or recognizes an alternate payee's right to receive all or a portion of a participant's benefits payable under the plan. I.R.C. § 414(p)(1)(A)(i); 29 U.S.C. § 1056(d)(3)(B)(i)(I).

2.    It is a judgment, decree, or order relating to the provision of child support, alimony payments, or marital property rights of a spouse, former spouse, child, or other dependent of a participant, and that is made pursuant to a state domestic relations law. I.R.C. § 414(p)(1)(B); 29 U.S.C. § 1056(d)(3)(B)(ii).

3.    It states the name and last known mailing address of the participant and of each alternate payee. I.R.C. § 414(p)(2)(A); 29 U.S.C. § 1056(d)(3)(C)(i). However, the QDRO will

not fail to be qualified "merely because the [QDRO] does not specify the current mailing address of the participant and alternate payee if the plan administrator has reason to know that address independently of the [QDRO]." S. Rep. No. 98-575, P.L. 98-397, reprinted in 1984 U.S.C.C.A.N. 2547, 2566.

4. It states the amount or percentage of participant's benefit payable to each alternate payee, or the manner in which the amount or percentage is to be determined. I.R.C. § 414(p)(2)(B); 29 U.S.C. § 1056(d)(3)(C)(ii).

5. It sets forth the number of payments or the period over which the plan must make payments to the alternate payee. I.R.C. § 414(p)(2)(C); 29 U.S.C. §1056(d)(3)(C)(iii).

Here, all five elements of a QDRO are met. The amended decree creates a right for Miller to receive a portion of Budzius's benefits payable under the retirement plan. The amended decree relates to Miller's marital property rights in Budzius's retirement account, and it was made pursuant to a state domestic relations law. The amended decree states the names of the participant (Budzius) and the alternate payee (Miller), and although it does not state Budzius's and Millers' mailing addresses, DRS knew how to contact them; in fact, DRS contacted both parties. The amended decree stated the manner in which the percentage due to Miller would be calculated. Finally, the amended decree set forth the period over which DRS was to pay Miller—as long as Budzius was receiving payments. We hold that the amended decree was a QDRO.

III.  AUTHORITY TO ENTER AMENDED DECREE

Budzius argues that his prior attorney impermissibly surrendered a substantial right of Budzius's when the attorney consented to the amended decree. Miller argues that because Budzius designated attorney Lombino to represent him, the court and the parties were entitled to rely on Lombino's authority. Accordingly, Miller argues that Budzius failed to meet the requirements to vacate a judgment. We agree with Miller and affirm the trial court.

Generally, if an attorney is authorized to appear, that attorney's acts are binding on the client. *Haller*, 89 Wn.2d at 547. But the attorney's ability to bind the client is limited: "an attorney is without authority to surrender a substantial right of a client unless special authority from his client has been granted him to do so." *Graves v. P.J. Taggares, Co.*, 94 Wn.2d 298, 303, 616 P.2d 1223 (1980) (quoting 30 A.L.R.2d 944, 947, § 3 (1953)).

Here, the trial court found that Lombino remained as Budzius's attorney throughout the relevant period. While Budzius challenges this finding of fact, we will uphold challenged findings as verities on appeal if they are supported by substantial evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premises. *Pilchuck Contractors, Inc. v. Dept. of Labor & Indus.*, 170 Wn. App. 514, 517, 286 P.3d 383 (2012). Here, Lombino represented Budzius during the divorce proceedings and continued to represent him with regard to child support. This is sufficient evidence to persuade a fair-minded person that Lombino was authorized to *appear* for Budzius, even if he was allegedly unauthorized to enter a specific order. We rule that the finding that Lombino was Budzius's attorney is a verity on appeal.

Here, Budzius testified that he never gave Lombino authority to amend the decree of dissolution. Accordingly, we must determine whether Lombino's action surrendered a "substantial right" of Budzius's.

Substantial rights may be compromised by "surrendering property without securing a rescission of the contract . . . settlement of a tort cause of action . . . not recording the testimony necessary for review in a parental deprivation proceeding . . . stipulating to a contingent consent judgment . . . [or] stipulating that the client is mentally ill without a hearing." *Graves*, 94 Wn.2d at 304-05; *see also Morgan v. Burks*, 17 Wn. App. 193, 195, 563 P.2d 1260 (1977); *Grossman v. Will*, 10 Wn. App. 141, 144, 516 P.2d 1063 (1973). *Graves* itself involved particularly egregious facts, in which the attorney failed to appear for a summary judgment hearing, failed to provide any evidence at trial, and failed to advise the client of a $131,200 memorandum order against the client. 94 Wn.2d at 299-300.

Here, Lombino did not dispose of a claim of Budzius's, as occurred in *Morgan* or *Grossman*. Nor did Lombino fail to appear, like in *Graves*. Budzius had already agreed to pay Miller, and the court merely clarified the means by which the agreed-upon payment would be made. Significantly, the original dissolution decree contemplated the entry of a supplemental order to address Budzius's payment.

While the QDRO may have required Budzius to pay more money than was contemplated in the original decree, the amount Miller received from Budzius's periodic payments was directly proportionate to contributions Budzius made to his retirement plan while he was married to Miller. Furthermore, Budzius had ample opportunity to pay the amount owed in the decree and never did so of his own volition. While reasonable people could disagree as to whether the new payment scheme deprived Budzius of a substantial right, the trial court's refusal to upset a 20-year-old

7

decree was not an *untenable* decision. The trial court did not abuse its discretion by ruling that Lombino's acquiescence was not sufficient grounds to vacate the amended decree.

Budzius raises two other challenges that we reject. First, Budzius argues that he was never given his constitutionally guaranteed right to adequate notice and opportunity to be heard before the amended decree was enforced against him. This argument fails under *Haller,* which holds that "notice to a client that his attorney is making application to the court for some action on its part, is not a requirement of court rule and there has been no showing that it is a requirement of due process." 89 Wn.2d at 547.

Second, Budzius argues that the amended decree may be vacated notwithstanding the passage of time because it was void. However, voidness is narrowly defined for CR 60 purposes. It is not enough that the order be erroneous—to be void, the order must actually exceed the "inherent power of the court." *Metro. Fed. Sav. & Loan Ass'n of Seattle v. Greenacres Mem'l Ass'n,* 7 Wn. App. 695, 699, 502 P.2d 476 (1972). This means that "a court enters a void order only when it lacks personal jurisdiction or subject matter jurisdiction over the claim." *Marley v. Dep't of Labor & Indus.,* 125 Wn.2d 533, 541, 886 P.2d 189 (1994); *see also In re Marriage of Schneider,* 173 Wn.2d 353, 360, 268 P.3d 215 (2011); *Kingery v. Dep't of Labor & Indus.,* 132 Wn.2d 162, 170, 937 P.2d 565 (1997). As a matter of law, Budzius cannot establish the absence of either personal jurisdiction or subject matter jurisdiction. Rather, "[i]f an attorney is authorized to appear, the jurisdiction over the defendant is perfect, and the subsequent action of the attorney,

not induced by the fraud of the adverse party, is binding on the client at law and in equity." *Haller*, 89 Wn.2d at 547 (quoting 3 E. Tuttle, A TREATISE OF THE LAW OF JUDGMENTS § 1252, at 2608 (5th ed. rev. 1925)). Because Budzius does not show that Miller committed fraud, his voidness argument fails.

Although Lombino may have acted against Budzius's interest when he entered into the amended decree, the court and Miller were authorized to rely on Lombino's representation of Budzius, and Lombino's acts will be imputed to Budzius. Budzius is free to pursue a remedy against Lombino for exceeding his authority, but he has failed to show that the trial court abused its discretion by declining to vacate the amended decree. We affirm the trial court.

IV.   ATTORNEY FEES

Both parties request reasonable attorney fees if they are successful. Miller argues that she is entitled to fees because Budzius's appeal is frivolous. Although we agree with Miller on the merits, we decline to award fees.

An appeal is frivolous "'if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.'" *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005) (quoting *Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 443, 730 P.2d 653 (1986)). All doubts as to whether an appeal is frivolous should be resolved in favor of the appellant. *Tiffany*, 155 Wn.2d at 241. Resolving all doubts in Budzius's favor, we rule that his arguments—while not convincing—are not frivolous either. Budzius's position arguably has support in *Graves*. Accordingly, we deny Miller's request for reasonable attorney fees.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:


_____
Bjorgen, A.C.J.


_____
Maxa, J.